In the Matter of the Application of MADELEINE B. STERN, Petitioner, for an Order of Mandamus against EDWARD J. FLYNN, as Secretary of State of the State of New York, Respondent.

Supreme Court, Albany County, March 1, 1935.

*Benjamin Gassman* [*Henry S. Kahn* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Dorothy U. Smith* of counsel], for the respondent.

*Harold Kohn,* on behalf of New York State Optometric Association, Inc., as *amicus curiæ.*

SCHENCK, J.    This is an application for a peremptory order of mandamus directing the Secretary of State to accept for filing a proposed certificate of incorporation of F. A. O'Keefe, Inc.    The Secretary of State has refused to file the proposed certificate of incorporation and has returned the same with the statement that a corporation is prohibited from engaging in the practice of optometry by virtue of the provisions of section 1433 of the Education Law. The certificate offered for filing sets up among the proposed purposes of incorporation the following: " To carry on the general business of opticians and dealers in optical goods, lenses and glasses of every description.    To manufacture, grind, prepare, buy, sell, import, export, distribute and deal in eye glasses, spectacles, lenses, opera and field glasses, magnifying glasses, mathematical and scientific instruments, cameras, photographic supplies, thermometers and any and all materials and accessories used in connection with or pertaining to the same or in the manufacture thereof, and appliances, devices, articles and materials used by oculists, opticians, physicians, surgeons and scientists.    To transact and carry on the optical business; to do, render and perform *optometrical* and *oculists'* work and services and to engage in the practice of optometry, provided it employs only licensed optometrists to do the work.    To grind, polish, cut, fit and shape glasses for all purposes."

The defendant contends that a corporation may not lawfully be formed pursuant to article 2 of the Stock Corporation Law " to do, render and perform optometrical and oculists' work and services and to engage in the practice of optometry, provided it employs only licensed optometrists to do the work."

There is no direct statutory prohibition which precludes a corporation from practicing optometry as may be found in the statutes making it unlawful for a corporation to practice law (Penal Law, § 280; Stock Corp. Law, § 7), or dentistry (Education Law, § 1313), or architecture (Education Law, § 1476).    The practice of optometry, however, is governed by the Education Law and requires that a person practicing this profession must have certain qualifications.

Three terms are very generally employed by laymen in connection with the treatment of eyes: the oculist, the optician and the

optometrist. While a definition of an optometrist is contained in the Education Law, there appears to be no statutory definition of the oculist or the optician.

It would seem that an oculist, whose technically correct title is that of an ophthalmologist, is a physician specializing in the diagnosis and treatment of diseases of the eye. He, as well, examines eyes for the purpose of determining whether glasses are needed, prescribes lenses, when necessary for the correction of vision, and in the practice of his profession is often called upon to perform surgical operations on the eyes.

An optician is not a licensed practitioner, but is one who makes eye glasses and lenses and fills prescriptions of the oculist or optometrist, much in the same manner as the druggist carries out the direction or prescription of the physician.

An optometrist, as defined by the Education Law, section 1425, is one who " by means or methods, other than by the use of drugs, diagnoses any optical deficiency or deformity, visual or muscular anomaly of the human eye, or prescribes lenses, prisms or ocular exercises for the correction or relief of the same." The optometrist also furnishes the glasses which he prescribes.

By virtue of the provisions of the Education Law, section 1428, no person is now permitted to practice optometry unless he shall have completed a high school education and has graduated from a school of optometry conducted by a department of a university registered by the Board of Regents, with a degree of either bachelor of arts or bachelor of science and holds a certificate of graduation in optometry. He must as well successfully pass a State board examination covering various subjects in relation to the eye, and before he may receive a certificate entitling him to practice, he must meet the requirements of the board as to character and fitness. The obvious purpose of the statute is to protect the public from unscrupulousness, ignorance, unskillfulness, deception and fraud.

It follows that with the sanction of the Legislature and subject to the strict regulation of the statute, optometry takes its place with the other professions, and although this is the first time the question of the practice of optometry by a corporation has been squarely presented to a court of this State, there have been several decisions as to the question of corporate practice of other professions.

In *Matter of Co-operative Law Company* (198 N. Y. 479), Judge VANN, writing for the court, said: " The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the

purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. *Quando aliquid prohibetur ex directo, prohibetur et per obliquium.* (Co. Lit. 223) * * *

"A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it. (*People* v. *Woodbury Dermatological Institute*, 192 N. Y. 454; *Hannon* v. *Siegel-Cooper Co.*, 167 N. Y. 244, 246.) The legislature in authorizing the formation of corporations to carry on ' any lawful business ' did not intend to include the work of the learned professions. Such an innovation with the evil results that might follow would require the use of specific language clearly indicating the intention."

Again, the policy of the State with respect to business corporations practicing medicine has been enunciated in several cases in the higher courts. (*People* v. *Woodbury Dermatological Institute*, 124 App. Div. 877; affd., 192 N. Y. 454; *Godfrey* v. *Medical Society*, 177 App. Div. 684; *People ex rel. Lederman* v. *Warden of City Prison*, 168 id. 240.) Likewise, it has been held that a business corporation cannot lawfully practice denistry by employing a licensed dentist to do the work. (*Hannon* v. *Siegel-Cooper Co.*, 167 N. Y. 244; *Matter of Lewis* v. *Harlem Dental Co.*, 189 App. Div. 359; *Matter of Lewis* v. *Woodbury Dental Parlors Co.*, 106 Misc. 78.)

If it is repugnant to the policy of the State to have the profession of medicine, of dentistry and of the law practiced by a corporation, it would seem to be quite as repugnant to have the profession in optometry practiced by a corporation. The rule laid down of *Matter of Co-operative Law Company (supra)* is as applicable to the practice of optometry as to the practice of the law. The practice of optometry may be carried on only by those persons who have complied with the statute and have met the required qualifications

as to moral character and educational fitness. It necessarily follows that the right to practice optometry is a personal one and confined to real persons and not to legal entities. A corporation as such cannot meet the requirements of the statute; it cannot have completed a course in a high school or in a university where optometry is taught, nor present the necessary certificate of character. It cannot pass a State board examination or present a degree earned in a university.

In *People* v. *Woodbury Dermatological Institute* (*supra*) the court held that the corporation was properly convicted of having advertised to practice medicine, and Judge WILLARD BARTLETT, writing the opinion for the court, says: " It is suggested in behalf of the appellant that to attribute to the legislature a design to prohibit a corporation which is not registered as a physician from advertising to practice medicine is to charge the lawmakers with doing an absurd act, inasmuch as it is impossible under the law for a corporation to register as a physician. There is nothing in this point. It might just as well be urged that there is no need of a law prohibiting a minor from voting since everybody knows that a minor has no legal right to vote. This fact does not prevent illegal attempts on the part of minors to exercise the right of suffrage, and the facts in the present case show that a corporation may undertake to practice medicine without authority of law."

In *Winslow* v. *Kansas State Board of Dental Examiners* (115 Kan. 450; 223 P. 308) the court said: " Corporations may not be graduated from dental colleges, they have neither learning nor skill, and they may not be examined, registered, nor licensed as dentists."

In *State* v. *Bailey Dental Co.* (211 Iowa, 78; 234 N. W. 260) suit was brought to enjoin a corporation from practicing dentistry, although its office was under the supervision of a licensed dentist. The opinion of the court contains this pertinent statement: " The statutes could be completely avoided and rendered nugatory if one or more persons who failed to have the requisite learning to pass the examination might, nevertheless, incorporate themselves formally into a corporation in whose name they could practice lawfully the profession which was forbidden to them as individuals. A corporation, as such, has neither education nor skill nor ethics. These are *sine qua non* to a learned profession.

" The defendant was practicing dentistry within the meaning of our statutes. It was necessarily doing so without a license. It was doing so, therefore, in violation of our statutes. Inasmuch as a corporation, by its very nature, is incapable of passing an examination for the purpose of a license, and therefore incapable of receiving a license, it cannot lawfully practice dentistry in this state."

As I see it, optometry, like the law, " is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose." (*Matter of Co-operative Law Company, supra,* at p. 483.) The relationship between an optometrist and his patient is of a personal and confidential nature, not unlike the relationship between an attorney and client, or physician and patient. The examination of an optometrist may not only indicate an eye condition, but may disclose other ailments and bodily afflictions of a more or less personal nature. True, the optometrist may not lawfully treat his patient for these ailments, but his patient is entitled to the assurance that the knowledge obtained in such examination shall be held inviolate and not become a record in the files of a business corporation. The practice of law by a corporation in this State is prohibited by statute, but quite apart from the statute, it is and was before the enactment of the statute against the public policy of this State. (*Matter of Pace,* 170 App. Div. 818.)

The proposed certificate of incorporation provides for the carrying on of the optical business and the rendition and performance of optometrical and oculists' work and services. A corporation is forbidden both by statute and judicial decisions from performing an oculist's work and services, an oculist being a duly licensed physician specializing in the diseases of the eye. While this motion could well be denied on the ground that a corporation may not render oculists' services, I have been requested to base this decision on the question of whether or not a corporation may be organized for the purpose of practicing optometry. I hold that it cannot lawfully be organized for such purpose.

The motion is denied, with fifty dollars costs.