No. 32,629

The State of Kansas, ex rel. Clarence V. Beck, Attorney General, *Plaintiff*, v. The Goldman Jewelry Company, *Defendant*.

(51 P. 2d 995)

Opinion filed December 7, 1935.

*Clarence V. Beck*, attorney general, *Theo. F. Varner*, assistant attorney general, *Roland Boynton* and *W. D. Kimble*, both of Topeka, for the plaintiff.

*William H. McHale* and *Charles S. Schnider*, both of Kansas City, for the defendant.

The opinion of the court was delivered by

Thiele, J.: This is an original proceeding to determine whether the defendant corporation is engaged in practicing optometry, and if so, to oust it from exercising any business as a corporation within the state. The state demurs to defendant's answer and asks for judgment on the pleadings.

It is not necessary to state the allegations of the petition which was filed on July 19, 1935. The defendant corporation's answer, filed September 5, 1935, admits that it is a Missouri corporation authorized to engage in the "retail jewelry business" in Kansas; that it has a place of busines at 646 Minnesota Ave., Kansas City, Kan., and that at the time of the filing of the petition it employed a qualified and registered optometrist who made examinations and tests of the human eye for the purpose of ascertaining the need for glasses and that said optometrist prepared lenses and fitted glasses for persons found to need the same; that at the time the petition was filed defendant corporation did advertise the services of an optometrist could be had free of charge at said store; that all fees paid by the patient for services rendered by its employee were paid to defendant, which did pay its employee a specified salary; that

said employee optometrist was then employed at defendant's pleasure; and that defendant did not have a certificate of registration from the board of examiners in optometry. Defendant denied it was doing any acts which amounted to a forfeiture of its charter or that it was abusing its powers or exercising powers not conferred upon it or that it was engaged in the practice of optometry. An allegation of the petition that defendant controlled all matters of policy in its alleged practice of optometry was denied, as was an allegation it owned the equipment used in said business. By way of further answer defendant alleged that on July 19, 1935, it *voluntarily* changed its method of doing business and rented to one Jacobs, a regularly licensed and practicing optometrist, space in its store and contracted with him to practice his profession in the rented space. The terms of the contract are alleged and a copy is attached to the answer. The defendant prays for judgment in its favor.

The contract is between the company and Jacobs, recites the company is engaged in the business of selling "optical goods and jewelry" at its Kansas City, Kan., store, is desirous of furnishing free optometrical examinations to prospective purchasers of glasses, desires to have a recognized licensed optometrist render professional services to its customers with the least possible inconvenience to them; that it has set aside a space in its store to be used by Jacobs exclusively, the space being described in a separate lease under which Jacobs agrees to pay $20 per month. The contractual clauses are to the following effect: The company agrees that in consideration of Jacobs' maintaining the office and being in personal attendance during specified hours it will send to him for examination all customers for glasses coming to defendant's store requiring or requesting through its optical department such examination and will pay him for each examination $2.75, settlement to be made on stated days. Jacobs agrees to purchase, maintain and keep complete up-to-date equipment, and to make examinations of all customers on the basis of fees stipulated. Jacobs is also to have the right to carry on his own practice at said location and to collect and retain his fees therefor. Jacobs also agrees the company may by advertisement refer to the fact that an arrangement has been made with him to make such examinations, but such advertisements must also state he is engaged in the general practice of optometry. Jacobs further agrees to attempt to sell to each customer whom his exami-

nation reveals may be in need of glasses, such glasses, frames and supplies as may be required to fill the wants of the customer. Jacobs is to do the necessary mechanical work of preparing and assembling glasses when not engaged in making examinations, and he is to receive a commission of ten percent of the gross amount of each sale, the commissions to be paid at stated intervals. Jacobs also agrees to purchase from the defendant all frames and lenses needed to supply his individual patients. The contract then recites:

"This contract may be terminated by either party hereto giving to the other a ten (10) days' written notice of his or its intention so to do and the giving of such notice shall be deemed a termination of said contract, effective ten (10) days from the date said notice is given."

The state contends that no corporation has authority or right to practice optometry; that the defendant corporation is practicing optometry, is abusing its power and exercising powers not conferred on it by law and is doing acts which amount to a surrender and forfeiture of its rights and privileges as a corporation within the state; while the defendant's contention is that a corporation may fit and sell glasses, frames, lenses and optical goods, provided it has connected with it, either as an employee or agent, a duly registered optometrist, whose name appears in all optical advertisements of the corporation.

We shall first inquire whether any corporation may engage in the practice of optometry, and particularly whether defendant corporation may do so, thereafter considering whether it has done so. Our statutes provide for the examination and registration of optometrists. R. S. 65-1501 recites:

"The practice of optometry is defined as follows: The examination of the human eye without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms, or ocular exercises and their adaptation for the aid thereof."

R. S. 65-1502 recites:

"That any person shall be deemed to be practicing optometry within the meaning of this act, who shall in any manner, except as in section 12 of this act; *first,* display any sign, circular, advertisement or device purporting or offering to in any manner examine eyes, test eyes, fit glasses, or setting himself or herself forth as an optometrist, optician, specialist, eyesight specialist, or refractionist, with intent to induce people to patronize himself, herself or any other person; *second,* who shall make in any manner a test or examination of the eye or eyes of another to ascertain the refractive muscular or pathological condition thereof; *third,* who shall in any manner adapt lenses to the human eye for any purpose, either directly or indirectly."

Section 12, referred to in the above quotation, is R. S. 65-1508 and is as follows:

"Nothing in this act shall be construed to prevent regular physicians and surgeons who are registered with the state medical board, as such, from testing eyes and fitting glasses."

R. S. 65-1503 makes it unlawful for any *person* to practice optometry without obtaining a certificate of registration from the board of exam'ners, and provides for filing the certificate in the county in which the holder practices. R. S. 65-1504 denounces certain acts, one of them (*g*) being as follows:

"To practice optometry in this state without having at the time of so doing a valid unrevoked certificate of registration issued by the optometry board of the state conspicuously displayed in his office and properly recorded as provided in this act;"

R. S. 65-1505 reads:

"Persons entitled to practice optometry in Kansas shall be, those persons heretofore lawfully registered, and every person of the full age of twenty-one years, who furnishes the board with satisfactory evidence of—

"(*a*) Age and moral character.

"(*b*) To possess a preliminary education equivalent to four years in an accredited high school.

"(*c*) Has attended and graduated from a recognized school of optometry requiring two thousand hours' attendance, during two school years of eight months each."

The remainder of the section pertains to the examination and registration of applicants. Other portions of the statutes need not now be referred to.

It would seem axiomatic that where the statute requires a practitioner of optometry to be a *person* (R. S. 65-1502) and that to be entitled to practice *persons* must have heretofore lawfully registered (as of June 9, 1923) and every *person* twenty-one years of age, of moral character, possessing specified educational qualifications, being a graduate of a recognized school of optometry of specified requirements, must have passed a requisite examination, that no corporation could be registered and thereby be entitled to practice.

At various times and in various places there have been no restrictions on the right to practice law, medicine and various arts of healing, but over a considerable length of time statutory restrictions have been placed on such privileges until now the practice of medicine, law and dentistry are regulated in every state, and in many states other professions of lesser importance have been likewise subjected to similar regulation.

In *Winslow v. Board of Dental Examiners,* 115 Kan. 450, 223 Pac. 308, plaintiff sought to enjoin the board from enforcing an order revoking his license to practice dentistry. It appears the Eastern Dental Company, a Missouri corporation, had obtained authority to do business in Kansas and maintained an office in Kansas City, Kan. On the door of its reception room its name appeared in large letters, and plaintiff's name appeared below in small letters. Plaintiff was the company's dental operator and was paid a salary and commission for his work. He made no contracts with patients. One of the stated causes for cancellation of plaintiff's license was that he did not practice under his own name. The board demurred to plaintiff's petition and appealed to this court from an order overruling the demurrer. In disposing of the appeal, this court said:

"Dentistry is a profession having to do with public health, and so is subject to regulation by the state. The purpose of regulation is to protect the public from ignorance, unskillfulness, unscrupulousness, deception, and fraud. To that end the state requires that the relation of the dental practitioner to his patients and patrons must be personal. . . . In the instant case, plaintiff's conduct is gravely reprehensible from the standpoint of morality. Corporations may not be graduated from dental colleges, they have neither learning nor skill, and they may not be examined, registered, nor licensed as dentists. Therefore the legislature does not permit the organization of a domestic corporation to practice dentistry, and because of that fact, a foreign corporation may not be authorized to practice dentistry in this state. (R. S. 17-503.) As a matter of law the Eastern Dental Company has no authority to do any corporate business in this state except to manufacture, buy and sell dental supplies and equipment. The charter board lacked power to grant it permission to do any other kind of business in this state, and the general terms of the certificate issued to the company must be interpreted accordingly. In any event, the company is practicing dentistry in this state under subterfuge, and plaintiff is collaborating with it in a scheme to circumvent the law and the public policy of the state." (pp. 451, 452.)

In the recent case of *Depew v. Wichita Association of Credit Men,* 142 Kan. 403, 49 P. 2d 1041, the principal question was whether a corporation was engaged in the practice of law. It is not here important to detail the acts complained of. This court found the acts constituted practice of law, were not within the authorized powers of the corporation under its charter, and would not be effective for the corporation if they were included in the charter, and ouster was ordered as to certain practices.

In *In re Coöperative Law Co.,* 198 N. Y. 479, 92 N. E. 15, 32 L. R. A., n. s., 55, the right of a corporation to practice law was under consideration, and it was held:

"A corporation for the practice of law is not authorized by a statute permitting the organization of a corporation for any lawful business, since the practice of the law is not a lawful business except for members of the bar, who have complied with all the conditions required by statute and the rules of the courts; and a corporation cannot perform the conditions." (L. R. A Headnote 1.) (See, also, note in last citation.)

In *In re Otterness*, 181 Minn. 254, 232 N. W. 318, it was held:

"A corporation cannot itself practice law, nor can it lawfully do so by hiring an attorney to conduct a general law practice for others for pay, where the fees earned are to be and are received as income and profit by the corporation." (Syl. ¶ 3.)

It is not deemed advisable to cite other cases of like nature dealing with the practice of law by a corporation.

In *State v. Kindy Optical Co.*, 216 Ia. 1157, 248 N. W. 332, decided in 1933, it was shown the company was a maker and seller of optical goods. Jensen, a licensed optometrist, was an employee of the company, which operated an optical department in a store in Des Moines. The company entered into a lease with Jensen in which it agreed to pay Jensen, and at the same time it made a contract with Jensen, subject to cancellation on seven days' notice, to employ him, and Jensen agreed to remain in its employ for two years. It was provided Jensen should be manager, subject to the direction and control of the company's officers. All moneys from the business belonged to the company, which agreed to pay Jensen a stipulated salary and commissions. The state brought action to enjoin, and the defendant contended it was not practicing optometry; that Jensen was its lessee and was not under its control in the practice of optometry; and that the company did not profess to be an optometrist or to assume the duties incident to said profession. It did not appear that defendant's name was used, the business being advertised in the name of the department store, but the advertisements were prepared and paid for by the company. The company owned the equipment. In its opinion the court said:

"The subtle attempt on the part of the defendant to evade the provisions of the Iowa statutes in reference to the practice of optometry, by employing a licensed optometrist to conduct its business, and by the execution of the alleged lease with its employee, is too patent to appeal strongly to a court of equity. Younker Bros. probably should have been made a party defendant in this action, as that institution had no more right to hold itself out to the public as being engaged in the practice of optometry than did the defendant.

"The execution of the so-called lease between the defendant and its em-

ployee Jensen, in connection with the contract of employment between the same parties, was also a sham and fraud and a too evident plan, purpose, and intent to evade the provisions of the statutes herein referred to. It is true that the name of the defendant did not appear publicly in connection with the business, but the record shows without controversy that the business was in fact owned and operated by the defendant company. The defendant company controlled the conduct and policies of the business. Jensen was simply its employee on a stipulated salary. The so-called lease between Jensen and the defendant, under the terms of which the defendant, as lessor, was to pay Jensen, as lessee, $281 per month, was only a clever attempt to change the character of Jensen from an employee to a lessee, and does not change the fact that Jensen was an employee of the defendant company.

"The defendant company could not conduct a business without a license. It could not obtain a license, and we can conceive of no reason why it should be permitted to continue to conduct a business under the license of an optometrist. We hold, therefore, that the defendant company was and is engaged in the practice of optometry and that it is so engaged in violation of the statutes of this state." (p. 1162.)

*Eisensmith v. Buhl Optical Co.*, (W. Va.) 178 S. E. 695, decided in 1934, dealt with a situation where the company maintained an optical department in a department store owned by another corporation. The optometrist in charge was paid a salary and commission by the optical company, but was subject to dismissal on request of the other company. The two companies had an arrangement whereby they divided the gross receipts. Plaintiffs, who were optometrists, sought to enjoin the alleged unlawful practice of optometry, and from an adverse decision both companies appealed. The supreme court, in its opinion, said:

"The statute, recognizing optometry as a profession, provides that it shall be unlawful for any person to practice optometry in this state who has not been licensed and registered as required by the act; . . .

"One licensed to practice optometry is forbidden to advertise, practice, or attempt to practice 'under a name other than' his own. This provision of the statute (Code 1931, 30-8-8) is certainly antagonistic to the view that a corporation may practice optometry through a licensed optometrist.

"It is unlawful, under the statute, to permit any person in one's employ, supervision, or control, not licensed as such, to practice optometry. This provision is emphasized by defendants as indicating that any unlicensed person, firm, or corporation may practice optometry by employing a licensed optometrist. The regulation was evidently directed against the practice of licensed optometrists employing students of optometry. The implication suggested cannot arise in the face of the express provision forbidding a registered optometrist from 'advertising, practicing, or attempting to practice, under a name other than' his own. One of the evident purposes of the statute was to prevent the commercialization of the profession." (p. 696.)

and held that the injunction granted by the trial court should be affirmed.

In *Stern v. Flynn*, 278 N. Y. Supp. 598, 599, 154 Misc. 609, plaintiff sought to compel the secretary of state to accept for filing a proposed certificate of incorporation, a part of the proposed purpose being "to do, render and perform optometrical and oculists' work and services and to engage in the practice of optometry, provided it employs only licensed optometrists to do the work." The court, after citing authorities holding that a corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it, said:

"If it is repugnant to the policy of the state to have the profession of medicine, of dentistry, and of the law practiced by a corporation, it would seem to be quite as repugnant to have the profession of optometry practiced by a corporation. The rule laid down of *Matter of Coöperative Law Co.,* supra, is as applicable to the practice of optometry as to the practice of the law. The practice of optometry may be carried on only by those persons who have complied with the statute and have met the required qualifications as to moral character and educational fitness. It necessarily follows that the right to practice optometry is a personal one and confined to real persons and not to legal entities. A corporation as such cannot meet the requirements of the statute; it cannot have completed a course in a high school or in a university where optometry is taught, nor present the necessary certificate of character. It cannot pass a state board examination or present a degree earned in a university. . . . The relationship between an optometrist and his patient is of a personal and confidential nature, not unlike the relationship between an attorney and client, or physician and patient. The examination of an optometrist may not only indicate an eye condition, but may disclose other ailments and bodily afflictions of a more or less personal nature. True, the optometrist may not lawfully treat his patient for these ailments, but his patient is entitled to the assurance that the knowledge obtained in such examination shall be held inviolate and not become a record in the files of a business corporation. The practice of law by a corporation in this state is prohibited by statute, but quite apart from the statute, it is and was before the enactment of the statute against the public policy of this state. *Matter of Pace,* 170 App. Div. 818, 156 N. Y. S. 641." (pp. 601-603.)

In *Jaeckle v. L. Bamberger & Co.,* (N. J. Ch.) 181 Atl. 181, decided October 17, 1935, the defendant, a corporation, owned and operated a department store, and in the store an optical and optometrical department. In this department it employed registered optometrists to examine the eyes of customers and prescribe glasses, the fees being paid to the company, which advertised the department, setting forth in the advertisement the names of the optom-

etrists employed by it. The New Jersey statute defines the practice of optometry that any person shall be deemed to be practicing optometry who so advertises himself, or—

"Who shall employ any means for the measurement of the powers of vision or the adaptation of lenses or prisms for the aid thereof, practice, offer or attempt to practice optometry as herein defined, either on his own behalf or as an employee or student of another, whether under the personal supervision of his employer or preceptor or not," etc. (p. 182.)

In disposing of the appeal, the court said:

"If the maxim be applied, 'Whoever acts through an agent is considered as acting himself,' it must be held that defendant is practicing optometry, but I think the maxim cannot be applied to the statute. The statutory scheme protects the public by requiring those who actually examine eyes to be properly qualified. It is immaterial whether they practice their profession on their own behalf or whether they are employed by other optometrists, or by persons not skilled in the art, or by corporations. Section 1 expressly includes in its scope a person who practices 'either on his own behalf or as an employee' of another, but not one who, through the agency of an employee, measures the powers of vision. Section 22 imposes a penalty on an individual or a company who employs to practice optometry a person not authorized under the statute. Clearly, a company which employs for this purpose a person who is authorized to practice optometry is not subject to the penalty. It follows, in my opinion, that the legislature did not intend to prohibit a company from employing registered optometrists to practice their profession." (p. 182.)

It is to be noted that the question of the power of a corporation as such to practice optometry is not discussed.

Another very recent case is *Rowe v. May Co.*, decided by the Ohio court of appeals on June 14, 1935, and not as yet reported. The holding seems to have been that under the statute of Ohio optometry and the practice thereof is made a profession, and that the defendant corporation, operating a department store, was without right or power to directly practice optometry or to indirectly practice it through the employment of registered optometrists.

Defendant attempts by analogy to argue that because corporations operate drug stores in which registered pharmacists are employed, corporations may practice optometry by employing registered optometrists to do the actual work of testing eyes. It is not necessary here to determine whether a corporation may operate a drug store. Recognizing that there may be substantial differences in many cases, our corporation act does permit chartering of corporations for the transaction of a chemical business (R. S. 1933 Supp. 17-202, subdivisions 26 and 46), while R. S. 1933 Supp. 65-636

makes it unlawful for any person not legally licensed or a person, firm or corporation who does not have in his or its continuous employ at each place of business a duly registered pharmacist, to take, use or exhibit the title "drug store," "pharmacy" or "apothecary," or a title of like import, and R. S. 65-1601 provides it shall be unlawful for any person to conduct a pharmacy, or retail, dispense or compound medicines or poisons unless such person be a registered pharmacist, or shall employ a registered pharmacist to conduct the business. It would appear the matter was controlled by statute, and the analogy is not complete nor at all conclusive. Our attention is likewise directed to R. S. 65-1510 requiring that the name of the registered optometrist connected with or in the employ of a firm or individuals who are not so registered must appear in all optical advertisements, and it is argued that this authorizes the corporation to practice optometry through the employment of a registered optometrist. That is not what the statute says or means. There is a material difference between the practice of optometry as defined in the statute and the simple sale of optical goods. To whatever extent the above statute may be construed, it does not confer on a corporation the right to practice optometry.

It is our judgment that under our statutes, the legislature, having in mind the protection of eyesight is just as important as the protection of property rights and advice thereon, as the protection of the teeth, as the protection against improper and unauthorized methods of healing, by the enactment of the statutes with reference to optometry recognized it as a profession and accordingly regulated it, and an examination of those statutory regulations conclusively shows that the practice of the profession is limited to individuals, and that corporations cannot be chartered to engage therein. Not only is this holding a necessary consequence of our statutes but it is in accord with the weight of authority.

It has been observed that defendant is authorized to engage in business in this state, to conduct "a retail jewelry business." We need not now determine whether the sale of optical goods may come within the limits of that purpose. If it be assumed that it does, the authority certainly did not contemplate the practice of optometry.

We now inquire whether the defendant has been engaged in the unlawful practice of optometry. It is conceded the corporation advertised the services of an optometrist could be had free at its place of business. Summarized, the statute states any person shall

be deemed a practitioner who shall display any advertisement offering in any manner to examine eyes, test eyes, or fit glasses, with intent to induce people to patronize himself, herself or any other person (R. S. 65-1502). Defendant's admission convicts it of violating the above provision. It argues, however, that it changed its method of doing business on July 19, 1935, and that its employee is now a licensee in control of the business and that it has no control over it. A quite similar arrangement was denounced in *State v. Kindy Optical Co.,* supra, and under *Eisensmith v. Buhl Optical Co.,* supra, and our own case of *Winslow v. Board of Dental Examiners,* it would seem a similar conclusion should be reached here. An examination of the contract between the defendant corporation and its employee Jacobs shows the lack of Jacobs' control, for the company can dispense with his services on ten days' notice whenever it concludes he is not producing enough sales of glasses to those referred to him for tests of the eyes. It likewise shows that Jacobs has nothing to do with the prices fixed for sales of glasses, and for his own services to the customer he is paid by the company and not by the customer. There is an entire lack of the relation that ordinarily exists between a professional man and his client. The fact the contract provides that Jacobs must supply and own his examining equipment and may have patients of his own, does not cure the faults above noted; the company rather offset any advantage to Jacobs thereunder by requiring him to buy supplies of it, and it requires no statement to the contrary in the contract to inform us that it is at prices fixed by the company.

Stronger language might be used to characterize them, but as we view them the contract of employment and the lease in connection with it are devices to avoid the provisions of our statutes with reference to practicing optometry, and cannot avail the defendant.

The state asks that the defendant be ousted, excluded, restrained and enjoined from exercising within this state any business as a corporation. We have concluded that such a complete ouster should not be ordered at this time, but that the defendant should be ousted as a corporation exercising any claimed rights or powers to practice optometry, and that it be enjoined from the doing of any act or acts, singly or together, which constitute the practice of optometry within the state as defined and regulated by statute, failing which, a further order may be made, jurisdiction being retained for that purpose, and it is so ordered.