STATE OF MISSOURI upon the information of ROY McKITTRICK, Attorney General, Informant, v. GATE CITY OPTICAL COMPANY, a Cor poration, and SEARS, ROEBUCK & COMPANY, a Corporation.—97 S. W. (2d) 89.

Court en Banc, October 2, 1936.*

*Roy McKittrick*, Attorney General, and *James L. HornBostel*, Assistant Attorney General, for informant.

---

*NOTE: Opinion filed at May Term, 1936, July 2, 1936; motion for rehearing filed; motion overruled at September Term, October 2, 1936.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for Sears, Roebuck & Company.

*Julius C. Shapiro* for Gate City Optical Company.

*F. J. Guilbault* and *Frank Coffman, amici curiae.*

HAYS, J.—This is a *quo warranto* proceeding brought upon the information of the Attorney General. The information alleged that respondents are engaging in the ''practice of optometry'' and doing an ''optometry business'' without license, without authority by virtue of their corporate powers but in abuse thereof, and in violation of the statutes of the State of Missouri. Issue was joined; a commissioner appointed, who heard and reported the evidence, and to his report no exception was taken.

Respondents in answer to the above contention allege that, by employing registered optometrists to fit and sell glasses, frames, lenses and optical goods; for and on their behalf, they are not subject to ouster.

The essential facts are substantially as follows: Both respondents are corporations. Respondent Sears, Roebuck & Company owns and operates two department stores in the city of St. Louis. Respondent Gate City Optical Company owns and operates two ''optical departments,'' one in either store of the respondent Sears, Roebuck & Company, under a lease agreement. By this agreement respondent optical company agrees to have graduate optometrists in charge of such departments who shall at all times be acceptable to respondent Sears, Roebuck & Company. These optometrists are subject to all the rules and regulations of Sears, Roebuck & Company and subject to discharge if they prove unsatisfactory to it.

The receipts from these departments are payable directly by the optical company and its customers to the cashier of respondent Sears, Roebuck & Company. The receipts are retained by it and weekly paid, after deducting twenty-five per cent and all other expenses, to respondent optical company.

Respondent optical company, in its conduct of these departments, furnished all of the equipment, supplies and merchandise necessary for the conduct of the business thereof and employed regularly licensed optometrists to manage same for it. All of the advertising of this department was in the name of respondent Sears, Roebuck & Company, but set forth in its advertisements were the names of said optometrists and the fact they were licensed, and said department was conducted and advertised as a department of Sears, Roebuck & Company.

The business of the optical departments so conducted is otherwise carried on and examinations, tests of eyesight, and fitting of spectacles by the optometrists in the mode prescribed by the optometry code. No direct charge is made for the examination. If the ex-

amination reveals that the customer does not need glasses, or that a pathological condition exists, requiring drugs or surgery, the customer is so advised and nothing further is done nor any charges made.

For the management of said department the optometrists so employed receive a weekly salary and a bonus of two per cent of the gross sale of lenses, frames and kindred merchandise.

The question for determination is whether the conduct of the respondents, as shown by the evidence, constitutes practicing optometry within the meaning of the optometry code.

A like question has been ruled by the courts of several of our sister states, and there is contrariety among their rulings upon it. The discordance appears to be due to differences in the terms of the statutes and public policy of the several states. We will review first and very briefly the line of decisions relied on by the informant in which were involved situations or circumstances similar in a few instances and in others more or less analogous to that with which we are here concerned.

Swanz v. Clark, 229 Pac. 1108, turned on whether one who practiced optometry was a mechanic or artisan within the meaning of an exemption statute which exempted mechanic's or artisan's tools or implements necessary to carry on his trade. The court held he was not in that class, because "the Legislature recognized optometry as a branch of the medical science."

Winslow v. Board of Dental Examiners, 115 Kan. 450, 223 Pac. 308, was a proceeding to enjoin the enforcement of an order of said board revoking plaintiff's license to practice dentistry. Plaintiff was employed by and practiced under the name of a foreign dental company, his own name not appearing in the company's advertisements. The essence of the court's decision, so far as here pertinent, was that, due to such cloaking of plaintiff's name, he was so practicing under a name other than his own, within the pertinent Kansas statute; and it was further held that the dental company was practicing dentistry under subterfuge and plaintiff was collaborating in a scheme to circumvent the law and the public policy of the State.

State ex rel. Beck v. Goldman Jewelry Company (Kan.), 51 Pac. (2d) 995, cites and approves the Winslow case, supra; summarizes the Kansas optometry statute as stating that "any person shall be deemed a practitioner who shall display any advertisement offering in any manner to examine eyes, test eyes, or fit glasses, with intent to induce people to patronize himself, herself, or any other person;" and observes that "defendant's admission convicts it of violating the above provision." That case classifies optometry as a profession.

State v. Kindy Optical Co. (Iowa), 248 N. W. 332, was ruled upon statutes unlike Missouri's, as were the other cases above. It was

pointed out therein, as it was in the others, that the advertisements did not contain the names of the optometrists but carried only the name of the company. The Iowa statutes, Sections 2438 and 2439, Code 1931, expressly classify optometry as a learned profession, placing it in the same category with medicine, surgery and dentistry; and the court in that case (1. c. 335) so applied the statutes to the facts.

Stern v. Flynn (Sup. Ct. Albany County), 154 Misc. 609, 278 N. Y. Supp. 598, 599, decided that the Secretary of State could not be compelled to accept for filing a purported certificate of incorporation which proposed, among other things, to empower the corporation ''to do, render and perform optometrical and oculists' work and services'' and ''to engage in the practice of optometry, provided it employ only licensed optometrists to do the work.'' The essential point decided therein was that, since the corporation could not meet the qualification requirements laid down by statute, it was beyond the power of the Secretary of State to make the certification. Unquestionably the decision was correct in that respect. The court undertook to determine what constituted the practice of optometry. The decision in this latter respect was *obiter*, we think. The later case Dickson v. Flynn (Sup. Ct., N. Y. App. Div.), 286 N. Y. Supp. 225, was a case of the same type. Apparently the same certificate, but with the matter above quoted deleted therefrom, was before the court, which sustained mandamus. The court quoted the New York statute (Sec. 1432a of the Education Law), which had been interpreted in Roschen v. Ward, 279 U. S. 337, and observed 1. c. 227: ''Thus the right to do a lawful act is curtailed. However, the right, so curtailed, still remains. The legislative intent is too clear to support extended argument. The statute was passed because the Legislature believed it an aid to public health, and the courts have held it to be constitutional because of its relation to public health. The benefit was intended for the public, not the optometrist.''

Eisensmith v. Buhl Optical Co. (W. Va.), 178 S. E. 695, which cites in its support Stern v. Flynn, supra, is the authority upon which informant principally relies as being ''practically on all fours'' with the instant case. There were three opinions delivered. The prevailing opinion puts the decision, that the defendant corporation was engaged in the practice of optometry, upon two grounds: (1) The statute of West Virginia recognizes optometry as a ''profession,'' and forbids a licensed optometrist ''to advertise, practice, or attempt to practice under a name other than his own;'' (2) the defendant was not excepted from the act under consideration and was amenable to the penal section thereof. Those provisions of the West Virginia act are identically the same as the exemption subsections and the penal section of the Missouri act, which will later be set out.

The concurring opinion interpreted the act in substantially the same way and also applied the doctrine of agency.

The author of the dissenting opinion, after holding the agency doctrine inapplicable, points out that each of the lettered exceptions describes a different person, firm or corporation; that each exception is complete in itself and contains no reference to any other; that exception (d) is just as much an exception (pure and simple) as exception (c); that (d) like (c) in that respect, prohibits nothing— it simply describes a type of corporate business, a type different from that described in exception (c): so that, the defendant being specifically exempt by subsection (c) it follows, of course, that those other "indirect provisions" have no application whatever to the defendant.

In line with this dissentient view is the decision in Jaeckle v. L. Bamberger & Co. (N. J. Ct. of C.), 181 Atl. 181. So far as pertinent to our question, the New Jersey act is substantially the same as that of our State. The court considered but declined to apply the doctrine of agency and held that defendant was not practicing within the meaning of the act. With regard to the statutory scheme for the protection of the public, the court observed that it was immaterial whether licensed optometrists practiced their profession on their own behalf or whether they were employed by other optometrists, or by persons not skilled in the art, or by corporations. The court also observed that said defining section specifically includes in its scope a person who practices " 'either on his own behalf or as an employee' of another, but not one who, through the agency of an employee, measures the powers of vision;" and that clearly, a corporation which employs for this purpose a person who is authorized to practice optometry is not subject to the penalty authorized to be imposed upon an individual or a corporation who employs to practice optometry one not authorized under the statute.

From the foregoing review it is apparent that, apart from specific legislative classification of optometry as, or use of terms implying the practice of optometry to be a profession, the one line of decisions seems to proceed on the theory that the legislative object as disclosed by the particular optometry code—the public policy of the particular state—was to preserve public health and welfare by requiring the practice to be kept on the plane of professional ethics and scientific learning, as in the so-called learned professions. The other line, on the normal plane of ethics and practical business economy. In a case of the latter class it is said that "the science of optometry, though it may require much preparation and skill, is not commonly known as one of the learned professions. Without statutory intervention there would be no protection of law to optometrists except as that which would apply to any business man."

436

Those cases are interesting and instructive, though of course not controlling, forasmuch as our State follows its own public policy. We now seek to discover and purpose to undertake to apply that policy.

In their return to show cause the respondents disclaim that either of them has claimed or does claim the right to engage in the practice of optometry or that the right to do so has been sought or could have been granted them. But they do insist that the Optometry Act of 1921 (Laws 1921, pp. 532-540, Secs. 1 to 18, R. S. 1929, Chap. 101, Secs. 13497-13513, inc.) not only does not forbid, but expressly and specifically authorizes the employment of licensed optometrists by corporations or natural persons not registered with the optometry board.

We accept as a datum the general rule as set forth in King v. Phoenix Ins. Co., 195 Mo. l. c. 304, 305, 92 S. W. 892, and cases there cited, that unless prohibited by statute, a corporation has all the rights of contracting, under the common law, that an individual has. And corporations, when they are not restrained by their charters, may adopt all reasonable means in the execution of their business which a natural person may adopt in the exercise of similar powers.

The case of State ex inf. v. Lewin, 128 Mo. App. 149, 106 S. W. 581, furnishes an apposite application of that rule and another. That was a proceeding by *quo warranto* to oust a medical corporation from engaging in the practice of medicine and surgery. The charter of the company contained this language: "The company is formed for the purpose of furnishing treatment for hernia and medical and surgical treatment of all other diseases, accidents and deformities." Respondent Levin, a duly licensed physician, entered into contract with the company as manager thereof " 'and during that time to personally treat all persons who employed said company to furnish treatment for the cure of hernia,' etc." The interpretation of the quoted charter power turned on the meaning to be ascribed to the word "furnish." The court said that if the meaning be taken to be "to give," then the charter conferred the power on the corporation to practice medicine and was void. The court applied the rule of construction, that where a grant from the State is susceptible of two constructions, one of which would render the grant void and the other make it legal and enforceable, the latter should be adopted, for the State should not, in the making of contracts, be convicted of doing a void and useless thing. Accordingly, the court construed "furnish" to mean "supply," and further said: "The corporation is not restrained by its charter from entering into contracts with persons to supply medical treatment, nor from entering into contracts with physicians to render medical and surgical services and has, in this respect, the same right to contract as a private individual (citing

the King case, supra)'' and the exercise thereof in the manner stated ''does not alter the legal status of the corporation or show it has violated the terms of its charter.''

██ The section of our statute which specially concerns this proceeding is the exemption section, which reads:

''Sec. 13502. Exempt from operation of law.—The following persons, firms and corporations are exempt from the operation of this act:

''(a) Physicians or surgeons of any school lawfully entitled to practice in this state.

''(b) Persons, firms and corporations who sell eyeglasses or spectacles in a store, shop or other permanently established place of business on prescription from persons authorized under the laws of this state to practice either optometry or medicine and surgery.

''(c) Persons, firms and corporations who manufacture or deal in eyeglasses or spectacles in a store, shop or other permanently established place of business (and who neither practice nor attempt to practice optometry, and who do not use a trial case, trial frame, test card, vending machine or other mechanical means to assist the customer in selecting glasses).''

In State v. Knapp, 327 Mo. 24, 33 S. W. (2d) 891, the defendant was prosecuted for practicing optometry without a license, by having and supplying customers in his store with a certain mechanical device, not here necessary to described, adapted to enabling customers for eyeglasses to select and fit themselves with glasses from stock at hand without the aid of any one else. The question before the court was whether the defendant, in so dealing, was exempt under said subsection (c). The court sustained the defendant's contention, that ''subsection (c) exempted from the optometry law persons who deal in eyeglasses in a store, shop or other permanently established place of business.'' The court said: ''In exempting *from the operation of the act,* without exception or qualification, persons who deal in eyeglasses or spectacles in a store, shop or other established place of business the Legislature must be presumed to have intended that such dealer might do the things reasonably and properly incident to such dealing,'' and a construction contended for, that such a dealer may not furnish his customer any device or facility with which he may serve himself in making this test and selection would defeat the evident legislative purpose as expressed in that clause. In concluding the court appropriately said that it is not our province to write into the exception clause exceptions or qualifications which the Legislature did not see fit to place there. The wisdom of the act and the propriety of the exemptions are within the province of the Legislature and not in province of the court. [Note: The portion of subsection (c) above shown in parentheses was not involved, it having later been added by amendment in 1931. However, it is well

438

enough to repeat that both the present subsections (b) and (c) in their entirety are precisely the same as subsections (c) and (d) which were interpreted in the case of Eisensmith v. Buhl Optical Co., 178 S. E., supra.]

The elucidations contained in the cases reviewed herein, and particularly as contained in State ex inf. v. Lewin, State v. Knapp, Jaeckle v. L. Bamberger & Co., and in the dissenting opinion in Eisensmith v. Buhl Optical Co., are clear, rational, logical, and convincing. The common result reached properly exemplifies the public policy of our State, and renders further discussion unnecessary. Certain significant terms used in our statute are pressed upon our attention as supporting the result already attained, but we deem it unnecessary to give them attention. Indeed, the statute seems so plain on its face as to furnish its own clear interpretation. In such case it seems appropriate to add, by way of emphasis, that, ''Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. '*Expressum facit cessare tacitum.*' We must not interpret where there is no need of it.'' [Clark v. Railroad, 219 Mo. 524, 534, 118 S. W. 40.]

Our writt of ouster is denied. All concur.

---

*NOTE: Opinion filed at May Term, 1936, July 2, 1936; motion for rehearing filed; motion overruled at September Term, October 2, 1936.