### STATE v. BENJAMIN D. RITHOLZ AND OTHERS.

115 N. W. (2d) 743.

June 8, 1962—No. 38,405.

*Milton H. Altman, Honnen S. Weiss,* and *Lipschultz, Altman, Geraghty & Mulally,* for appellants.

*Walter F. Mondale,* Attorney General, and *Richard W. Johnson,* Special Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by the state, at the instance of the State Board of Optometry, pursuant to Minn. St. 148.52 to 148.62, to restrain the individual defendants, residents of Chicago, and King Optical Company, a copartnership comprised of such defendants, from "soliciting business by

advertisements containing 'price advertising.' "[1] King Optical Company is engaged in the business of manufacturing and selling eyeglasses upon prescriptions from licensed optometrists, physicians, and surgeons. Its principal place of business is in Chicago, and it maintains offices in a number of states including Minnesota. It may be classified both as an optician and as a dispensing optician.[2] One of its offices is maintained at Winona. This office is under the personal supervision, direction, and authority of Emerit O. Thompson, a licensed optometrist.[3] It is not disputed that King Optical Company, for convenience

---

[1] In a previous decision, this court held that service of summons and complaint here upon the defendants was properly made. State v. Ritholz, 257 Minn. 201, 100 N. W. (2d) 722.

[2] An optician or optical supplier is a skilled artisan qualified to grind lenses and perform other tasks which a dispensing optician may not be equipped to perform. He may also be a dispensing optician.

A dispensing optician is a craftsman and a merchant. He may grind lenses, and he usually maintains a stock of frames from which his customers may make selections. In dispensing glasses to the public, he must do so under the direction of an optometrist and pursuant to his prescription or the prescriptions of other persons authorized to examine eyes. The state does not require that either an optician or dispensing optician be licensed.

An optometrist is required to be licensed and qualified under the statutes and may examine eyes for refractive errors and prescribe corrective lenses therefor. He may also act as a dispensing optician in fulfilling prescriptions for and dispensing glasses to the public.

An ophthalmologist is a duly licensed doctor of medicine who specializes in care of the eyes. He is not subject to the regulatory provisions applicable to optometrists under §§ 148.52 to 148.62. He likewise may act as craftsman and merchant in fulfilling prescriptions and dispensing glasses; or he may submit his prescriptions to dispensing opticians for fulfillment.

[3] Section 148.56 provides that "it shall be unlawful for any person, not licensed as an optometrist * * * to sell or dispose of, at retail, any spectacles, eye glasses, or lenses for the correction of vision in any established place of business or elsewhere in this state except under the supervision, direction, and authority of a duly licensed optometrist holding a certificate under sections 148.52 to 148.62, who shall be in charge of and in personal attendance at the booth, counter, or place where such articles are sold * * *." Section 148.57 prescribes the requirements for a certificate to practice optometry.

referred to here as the optical company, solicits business for the sale of eyeglasses by advertisements which set forth the price at which such glasses will be supplied to customers; that Dr. Thompson examines the eyes of persons coming into the Winona office and prescribes lenses therefor for corrective purposes when required; that he charges and collects a standard examination fee for such services which is turned over to and retained by the optical company, which pays him a weekly salary for his services;[4] that the optical company supplies lenses pursuant to Dr. Thompson's prescriptions, which it fits into frames selected by, adjusted for, and sold to customers at a standard price; and that the optical company also supplies lenses and sells glasses pursuant to the prescriptions of other licensed optometrists or ophthalmologists. In its advertisements, the optical company makes no reference to the presence of Dr. Thompson in its office and does not otherwise hold itself out as either an optometrist or an ophthalmologist.

After a hearing on the merits and the submission of testimony and other evidence including the advertisements used by the optical company, the trial court made findings and conclusions and ordered judgment restraining defendants from soliciting business "by advertisements containing price advertising." Its findings included the following:

"That * * * the defendants were and are now dispensing opticians who manufacture and sell eye glasses in accordance with prescriptions from duly licensed physicians and surgeons or optometrists, which prescriptions are supplied by defendants' customers; that the sale and dispensing of said eye glasses is carried on at an established place

---

[4] In Williams v. Mack, 202 Minn. 402, 278 N. W. 585, it was held that under § 148.56 it is lawful for a dispensing optician to employ a licensed optometrist to supervise and conduct its sales. In State, by Ervin, v. Goodman, 206 Minn. 203, 288 N. W. 157, it was held that the object of requiring sales of glasses to be under the charge and direction of an optometrist as prescribed by § 148.56 is that the customers of a dispensing optician may receive all services ordinarily rendered by an optometrist, including examination of eyes, selection of proper lenses, and adjustment of them to the eyes.

of business in the Morgan Block, 68 West Third Street, in the City of Winona, Minnesota, under the supervision, direction and authority of Emerit O. Thompson, O.D., a duly licensed optometrist * * * who is in charge of and in personal attendance at said place of business; that the defendants solicit patronage by the use of advertisements which set forth the price at which glasses will be supplied to customers; that said Dr. Thompson, as an employee of the defendants, refracts the eyes of persons coming to said place of business, and the defendants collect and keep all fees charged patients therefor; that said partners control the hours of the optometrist and other employees employment, and furnish and supply the necessary office rooms and make available for the use of the optometrist such equipment and supplies as are necessary for testing and measuring the powers of vision of the human eye and rendering other optometrical services.

"That the * * * King Optical Co., solicit[s] patronage for said business by advertisements and that such advertisements are 'price advertisements'; and that copies of such advertisements bearing the date of their respective appearances in The Winona Daily News, a newspaper published in * * * Winona, are attached to and a part of the complaint * * *.

"That after the service of process upon the defendants other and additional of said 'price advertisements' were published in said newspaper at the instance of the defendants * * *.

"That there is no allegation in the pleadings that any of the statements contained in said advertisements are false, misleading, fraudulent, deceiving or for the purpose of causing misunderstanding, and there is no denial that the defendants supply glasses at the advertised price."

In a memorandum accompanying its order, the court stated:

"Defendants have many contentions, including, that the statutes have no application to them; that the statutes, if applied to the facts in [t]his case, are in violation of the United States and Minnesota Constitutions; * * *.

"Why should legislation against 'price advertising' as to the price

of eyeglasses be held valid as to the optometrist and not as to the optician?

"The result of forbidding the professional practitioner to resort to such advertising and permitting the optician to indulge in the harmful practice does not eradicate the evil. The whole field must be covered if protection is to be afforded the public.

(City of Springfield v. Hurst, 56 N. E. 2d 185 at 188, and quoted in Bedno v. Fast, (Wis) 95 N. W. 2d 396 at 400.)

"On an appeal in an action to enjoin the Minnesota State Board of Optometry from proceeding with the hearing of charges against a licensed optometrist, the gist of which charges were that he accepted employment as an optometrist at a stated salary with Goodman Brothers Jewelry, an entity incapable of being licensed as an optometrist, the court after affirming a judgment for the plaintiff concluded its opinion as follows:

"If the Goodman Brothers Jewelry Company violates any provision of the optometry statute or the lawful rules of the defendant board it may proceed against the company.

(Williams v. Mack, 202 Minn. 402 at 410)

and in said opinion (at 406) also stated:

"The employment being lawful under the optometry law as it now stands, it seems to us that it is contrary to the letter and spirit of the law to make the employee responsible for the employer's violation of the law and to impute the knowledge of such violations to the employee. *If the employer violates the optometry act in any manner he may be enjoined or prosecuted.*

\* \* \* \* \*

"It is admitted that Lee v. Williamson, 348 U. S. 483, is determinative of the federal issue. At page 490 we find:

"An eye glass frame considered in isolation, is only a piece of merchandise. But an eye glass frame is not used in isolation as Judge Murrah said in dissent below; it is used with lenses, and lenses, pertaining as they do to the human eye, enter the field of health. Therefore, the Legislature might conclude that to regulate one effectively it would have to regulate the other.—We see no constitutional reason

why a state may not treat all who deal with the human eye as members of a profession who should use no merchandising method of obtaining customers.

(Williamson v. Lee Optical of Oklahoma, 348 U. S. 483 at 490.)

"In Williams v. Mack, 202 Minn. 402 at 404, the court stated:

\* \* \* \* \*

\* \* \* at page 407:

"To be sure, our optometry statutes, with the restrictions against advertising prices and sharing fees and other regulations, give rise to the suspicion that they were sponsored by the optometrists for their own pecuniary benefit instead of being prompted by the legislators' pressure of the need of protecting the public. But, that notwithstanding, it is the court's duty to construe them as primarily intended to safeguard people's eyesight."

The memorandum continued:

"\* \* \* The defendants are non-residents; \* \* \* the defendants are not charged with an isolated offense but with numerous violations of a misdemeanor statute which penalizes breach of law enacted to protect the public health and under the principles enunciated in State v. Red Owl Stores,. Inc., 253 Minn. 236, injunctive relief appears to be the proper remedy to prevent them from unlawfully engaging in those acts which the statutes seek to prevent for the protection of the public."

This appeal is from an order denying defendants' motion for amended findings or a new trial. Their contentions may be summarized as follows:

(1)  The provisions of §§ 148.56 and 148.57 relate only to optometrists or to other persons authorized to examine eyes and prescribe corrective lenses therefor and have no application to a dispensing optician.

(2)  § 148.56 does not prohibit price advertising of wares and merchandise by an optometrist but relates only to price advertising as to his professional services.

(3) § 148.56 does not restrict price advertising as such unless it can be established that it deceives or defrauds the public.

(4) If §§ 148.56 and 148.57 be held applicable to a dispensing optician under the circumstances presented here, such statutes must be held unconstitutional.

(5) Relief by injunction against the defendants as sought by plaintiff here is not authorized by any of the provisions of §§ 148.52 to 148.62.

■ In § 148.56 there is set forth a description of certain acts or conduct which are defined as "practicing optometry" and authorized only for regularly licensed physicians and surgeons and optometrists licensed under § 148.57. While such an optometrist may engage in the activities described, a dispensing optician is not authorized to do so. The practices limited to the licensed optometrist in § 148.56 include two types of advertising —(1) advertisements of "himself as an optometrist" and (2) advertisements by displaying signs of "an eye, a pair of eyes, a pair of glasses or spectacles." By § 148.57, subd. 3, the legislature has authorized the Board of Optometry to revoke the license of an optometrist for "price advertising" and "free examination advertising" which the legislature therein defines as " '[u]nprofessional conduct' * * * likely to deceive or defraud the public." It must follow that while a licensed optometrist is authorized under § 148.56 to engage in the two types of advertising permitted thereunder as above set forth, under § 148.57 in neither of such cases may he "price advertise" with respect thereto. In other words, his advertising with reference to either his professional skill and services or his merchandising of spectacles, frames, and lenses, must not include "price advertising."

■ The question here presented is whether the prohibitions included in § 148.57, subd. 3, which appear to be limited to the conduct of a licensed optometrist, may be extended to a dispensing optician who is using the services of a licensed optometrist as required by § 148.56 and price advertises his wares and merchandise as a dispensing optician and not as an optometrist. We doubt if the statutes referred to can be so construed. At the outset we are confronted with the pro-

vision in § 148.56 to the effect that "[n]othing in sections 148.52 and 148.62 shall be construed to apply to * * * sales upon prescription from persons legally authorized by the laws of this state to examine eyes and prescribe glasses therefor, * * *." Under these sections no one can engage in the sale of glasses except on prescriptions from persons authorized by the laws of the state to examine eyes and to prescribe glasses therefor. If a dispensing optician did not comply with § 148.56 or if he adopted the practices therein described as practicing optometry, of course such a violation would constitute a gross misdemeanor under § 148.61, subd. 5. However, it is lawful for a dispensing optician to sell eyeglasses and lenses at retail if he has present in and in charge of his place of business a licensed optometrist; or to sell glasses only pursuant to a prescription. Williams v. Mack, 202 Minn. 402, 278 N. W. 585; State, by Ervin, v. Goodman, 206 Minn. 203, 288 N. W. 157; § 148.56. Here it is not disputed that the defendants are so engaged and have complied with all the other statutory regulations having reference to opticians. The court particularly found that there was no allegation in the pleadings that the advertisements contained fraudulent or deceitful statements. Since in any event "price advertising" is defined as unprofessional conduct only with reference to the practice of optometry, it is difficult to see how the statute can be construed as having any application whatever to defendants here.

■ Obviously, §§ 148.52 to 148.62 were intended to regulate the practice of optometry. They prescribe the qualifications and requirements for licensing optometrists and direct the Board of Optometry to supervise their professional conduct. The "unprofessional conduct" referred to in § 148.57, subd. 3, including that of price advertising, has reference solely to the practice of optometry. Had the legislature intended thereby to prohibit a dispensing optician from "price advertising" surely it would have expressed such intent in definite language.

■ It is suggested that it would be unreasonable to construe the provisions of §§ 148.56 and 148.57, subd. 3, as prohibiting an optometrist from "price advertising" his merchandise, but permitting a dispensing optician to do so. The trial court inquired, "Why should legislation against 'price advertising' as to the price of eyeglasses be

held valid as to the optometrist and not as to the optician?" It concluded that to forbid the former and permit the latter to do so does not "eradicate the evil." But we cannot escape the conclusion that it is for the legislature rather than the courts to eliminate the distinction noted. For this court to do so would constitute the usurpation of legislative power through judicial fiat.

5. Counsel on both sides have cited a number of decisions which appear to indicate a division of authority on the issue presented here. We have noted, however, that where statutes similar to §§ 148.56 or 148.57 are involved the courts have arrived at conclusions similar to this. Thus in Sage-Allen Co. Inc. v. Wheeler, 119 Conn. 667, 675, 179 A. 195, 198, 98 A. L. R. 897, where the statute provided that its terms had no application to persons selling eyeglasses on prescriptions from certified optometrists, the court stated:

"It is obvious from these provisions that the statutes are not intended to control the business of opticians who manufacture or sell optical goods but do not attempt to measure the vision of the eye and adapt lenses therefor."

Likewise, in State ex rel. Booth v. Beck Jewelry Enterprises, 220 Ind. 276, 41 N. E. (2d) 622, 141 A. L. R. 876, under an act relating to the "practice of optometry," a provision forbidding price advertising by an optometrist was held to be a regulation of his practice but not to forbid price advertising by opticians. Also, in Kindy Opticians, Inc. v. State Board, 291 Mich. 152, 155, 289 N. W. 112, 113, which involved a statute relating to the practice of optometry, and which made it unlawful for "any person to advertise glasses * * * at a price," it was stated:

"The record is convincing that the business in which the plaintiff was engaged was that of a dispensing optician. The title of the act relates to optometrists only, and not to opticians. * * * therefore * * * plaintiff was entitled to the relief sought, namely, a declaration * * * that its business, that of a dispensing optician, cannot be interfered with by the defendants, or any of them, while it is engaged in the lawful prosecution of such business."

See, also, Jaeckle v. L. Bamberger & Co. 119 N. J. Eq. 126, 181 A. 181; Silver v. Lansburgh & Bro. 72 App. D. C. 77, 111 F. (2d) 518, 128 A. L. R. 582; State ex rel. Attorney General v. Gus Blass Co. 193 Ark. 1159, 105 S. W. (2d) 853; Georgia State Board of Examiners v. Friedmans' Jewelers, 183 Ga. 669, 189 S. E. 238; Dvorine v. Castelberg Jewelry Corp. 170 Md. 661, 185 A. 562; State ex inf. McKittrick v. Gate City Optical Co. 339 Mo. 427, 97 S. W. (2d) 89; Golding v. Schubach Optical Co. 93 Utah 32, 70 P. (2d) 871; State ex rel. Harris v. Kindy Optical Co. 235 Wis. 498, 292 N. W. 283; Williams v. Mack, 202 Minn. 402, 278 N. W. 585; State, by Ervin, v. Goodman, 206 Minn. 203, 288 N. W. 157; Matter of Dickson v. Flynn, 246 App. Div. 341, 286 N. Y. S. 225, affirmed, 273 N. Y. 72, 6 N. E. (2d) 102.

In a number of jurisdictions it has been held that an optometrist may not practice optometry as the employee of another not authorized to practice it himself for the purpose of permitting the latter to perform the functions ordinarily performed by an optometrist. In such decisions there is absent a statute such as § 148.56, which requires the presence of an optometrist in the dispensing establishment of the optician. See, Neill v. Gimbel Bros. Inc. 330 Pa. 213, 199 A. 178; Funk Jewelry Co. v. State, 46 Ariz. 348, 50 P. (2d) 945; Eisensmith v. Buhl Optical Co. 115 W. Va. 776, 178 S. E. 695; State v. Kindy Optical Co. 216 Iowa 1157, 248 N. W. 332; Kay Jewelry Co. v. Board of Registration, 305 Mass. 581, 27 N. E. (2d) 1; State ex rel. Beck v. Goldman Jewelry Co. 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334; Ezell v. Ritholz, 188 S. C. 39, 198 S. E. 419.

The order appealed from is reversed with directions to order judgment for defendants.