In the Matter of the Application of ELIZABETH DICKSON and Others, Respondents, for a Peremptory Order of Mandamus against EDWARD J. FLYNN, as Secretary of State of the State of New York, Appellant, and OPTOMETRICAL SOCIETY OF THE CITY OF NEW YORK and Others, Interveners, Appellants.

Third Department, March 5, 1936.

*Herbert D. Hamm*, for the respondents.

*John J. Bennett, Jr.*, Attorney-General [*Dorothy U. Smith*, Assistant Attorney-General, of counsel; *Henry Epstein*, Solicitor General, with her on the brief], for the Secretary of State, appellant.

*Talley & Lamb* [*Alfred J. Talley* of counsel; *Edmund J. Delany*, *Maxwell Ross* and *James Flynn* with him on the brief], for the interveners-appellants Optometrical Society of The City of New York, Bronx County Optometric Society and North Queens Optometric Society.

*Harold Kohn*, for the intervener-appellant New York State Optometric Association, Inc.

*Robert Rosenberg* [*N. Bernard Silberg* with him on the brief], for the Retail Opticians of America, *amicus curiæ*.

HILL, P. J. Appeal from a peremptory order of mandamus which directs the Secretary of State to file and record petitioners' certificate of incorporation of " Four-Boro Optical Corp." That official bases his refusal upon the ground that the purpose clause in the certificate would permit the corporation to practice optometry, and that a corporation may not be organized for such purpose. He found authority for his refusal in *Matter of Stern* v. *Flynn* (154 Misc. 609) and in opinions by two Attorneys-General (Opinions of Attorney-General, 1913, 401; *Matter of Right to Form a Corporation*, 21 State Dept. Rep. 75). The wording in the certificate which offended follows: " To carry on a general optical business; to sell at retail spectacles, eyeglasses and lenses for the correction of vision, provided that duly qualified optometrists be in charge of and in personal attendance at the booths, counters or places where such articles are sold in the respective stores or established places of business of this corporation; to employ duly qualified optometrists for the purpose of being in charge of and in personal attendance at the booths, counters or places where this corporation sells at retail spectacles, eyeglasses and lenses for the correction of vision in the respective stores or established places of business of this corporation and for the purpose of examining the eyes of customers of this corporation where such duly licensed optometrists, while in charge of and in personal attendance at such booths, counters or places, deem the same to be necessary in connection with the sale at retail by this corporation of spectacles, eyeglasses and lenses for the correction of vision."

The draftsman of this certificate followed meticulously section 1432-a of the Education Law (added by Laws of 1928, chap. 379) as construed by *Roschen* v. *Ward* (279 U. S. 337). The statute makes it unlawful to sell at retail spectacles, eyeglasses or lenses for the correction of vision unless a duly licensed physician or duly qualified optometrist is in charge of and in personal attendance at the booth, counter or place where such articles are sold. The *Roschen* case was brought for an injunction to restrain the enforcement of the statute upon the ground of unconstitutionality. It was determined that the act had definite relation to the public health and, therefore, was constitutional. In construing the statute, the opinion by the late Mr. Justice HOLMES states: " But the argument most pressed is that the statute does not provide for an examination by the optometrist in charge of the counter. This as it is presented seems to us a perversion of the Act. When the statute requires a physician or optometrist to be in charge of the place of sale and in personal attendance at it, obviously it means in charge of it by reason of and in the exercise of his professional capacity " (p. 339). Counsel for an intervener here advances the same argument answered in the quoted portion of the *Roschen* opinion, urging that the statement there made is obiter. With this I do not agree, as the meaning and effect of a statute must be considered in determining its constitutionality.

Until 1908 any person could sell spectacles or eyeglasses without let or hindrance. In that year the Legislature enacted the initial statutes concerning the licensing of optometrists. By an amendment to the article (Laws of 1928, chap. 379) section 1432-a was added. (Later amendments do not affect our question.) " It shall be unlawful for any * * * corporation to sell, at retail, as merchandise, in any store or established place of business in the State, any spectacles, eyeglasses, or lenses for the correction of vision, unless a duly licensed physician or duly qualified optometrist, certified under this article, be in charge of and * personal attendance at the booth, counter or place, where such articles are sold in such store or established place of business."

Thus the right to do a lawful act was curtailed. However, the right, so curtailed, still remains. The legislative intent is too clear to support extended argument. The statute was passed because the Legislature believed it an aid to public health and the courts have held it to be constitutional because of its relation to public health. The benefit was intended for the public not the optometrist. Otherwise the statute would have been unconstitutional.

---

* So in original, " in " evidently omitted.

The Legislature did not deem it necessary to create a professional optometrist monoply. Poverty or the lack of ability to pay has relation to public health and the Legislature may well have believed that competition between optometrist and store would make for more reasonable prices and profits, and that public health would be benefited thereby and could not suffer with an eye specialist present in the store at the place of sale. Unless some constitutional right is invaded, the clear intent of the Legislature should be given effect.

The business in which the corporation is to engage is the sale of eyeglasses, spectacles and lenses at retail. It does not become the practice of medicine or optometry because of the presence of a physician or optometrist. However, for the sake of the argument, if it be determined that the employment of a physician or optometrist amounts to a limited practice of medicine or optometry, petitioners are still entitled to the relief they seek. All persons had the right to sell eyeglasses before the enactment of article 54 of the Education Law. The Legislature by section 1432-a of that article has explicitly recognized and reaffirmed that right and, in addition, has required that the selling be surrounded by safeguards.

The right to organize a corporation for the purpose of practicing a profession is considered in *People* v. *Woodbury Dermatological Institute* (192 N. Y. 454). I quote from the opinion: " The prohibitions * * * against the practice of medicine without lawful registration in this State or in violation of any of the provisions of the statute or against advertising by any person not a registered physician were not intended to apply and plainly could not reasonably be held to apply to corporate bodies which by the express provisions of other statutes are authorized to carry on the practice of medicine upon compliance with their provisions and without registration " (p. 457). " Thus, a hospital duly incorporated under the Membership Corporations Law unquestionably holds itself out as being able to diagnose, treat, operate and prescribe for human disease, pain, injury, deformity or physical condition * * *. An institution of this character, possessing legislative authority to practice medicine by means of its staff of registered physicians and surgeons, comes under the direct sanction of the law in so doing " (p. 458).

The *Woodbury* case is cited and commented upon in *Messer Co.* v. *Rothstein* (129 App. Div. 215; affd., 198 N. Y. 532). I quote from the opinion in the Appellate Division: " The same court also held in the *Woodbury Dermatological Institute Case* (*supra*) that as the Legislature authorized the formation of corporations

for hospital purposes, such corporations would not be guilty of a crime if they should advertise to treat diseases, although not registered under the Medical Act, provided such treatment was administered by duly registered physicians " (p. 225).

A Pennsylvania statute was determined to be unconstitutional by *Liggett Co.* v. *Baldridge* (278 U. S. 105). It provided: " Every pharmacy or drug store shall be owned only by a licensed pharmacist, and no corporation, association, or co-partnership shall own a pharmacy or drug store, unless all the partners or members thereof are licensed pharmacists." A license as a pharmacist could be obtained only after a course of study quite as exacting as the New York statute prescribes for optometrists. The ground for the decision was that the *ownership* of a drug store had no relation to the public health as other and constitutional laws required that none but a registered pharmacist should be in charge or be permitted to compound prescriptions. The court, in its opinion, states, concerning the statute, " It deals in terms only with *ownership*. It plainly forbids the exercise of an ordinary property right and, on its face, denies what the Constitution guarantees. * * * In the light of the various requirements of the Pennsylvania statutes, it is made clear, if it were otherwise doubtful, that mere stock ownership in a corporation owning and operating a drug store, can have no real or substantial relation to the public health " (p. 113). " If detriment to the public health thereby has resulted or is threatened, some evidence of it ought to be forthcoming. * * * The claim that mere ownership of a drug store by one not a pharmacist bears a reasonable relation to the public health, finally rests upon conjecture, unsupported by anything of substance " (p. 114). With the public health protected through the requirement that a physician or optometrist be in charge where eyeglasses are sold, by an analogy of reasoning if the right to own eyeglasses as merchandise and to sell them at retail was curtailed by statute, there would be a denial of that which the Constitution guarantees. The New York Legislature has attempted no such curtailment but, as earlier indicated, has reaffirmed the constitutional right to sell eyeglasses at retail.

The Secretary of State cited *Matter of Co-operative Law Co.* (198 N. Y. 479) to sustain his position. Some of the statements in that opinion, taken from their setting and background, might seem to sustain his claim. The question under consideration there was whether " a corporation could be lawfully organized to practice law " under the authority " found in that part of the Business Corporations Law which provides that ' three or more persons may become a stock corporation for any lawful business ' " (p. 483).

Then the opinion defines the meaning of the clause " lawful business " as follows: " This means a business lawful to all who wish to engage in it. The practice of law is not a business open to all." It was there decided that under the general authority of the Business Corporations Law a corporation might not be organized for the purpose of practicing law. Here we are dealing with a different question. The Legislature has granted the right to sell eyeglasses at retail if a physician or optometrist be present at the sale. The writer of the *Co-operative* opinion cited with approval the *Woodbury Dermatological Case* (*supra*), which decided that with statutory authority a corporation could lawfully be organized to practice medicine.

Disregarding the fact that there is a statute which permits a corporation to practice optometry and none which permits the practice of law, still the general distinction between the professions of optometry and law makes the *Co-operative* case inapplicable.

" Formerly, theology, law and medicine were specifically known as *the professions;* but as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge as distinguished from mere skill." (*United States* v. *Laws*, 163 U. S. 258, 266.) An optometrist is defined in the Education Law (§ 1425) as a person " who by any means or methods, other than by the use of drugs, diagnoses any optical deficiency or deformity, visual or muscular anomaly of the human eye, or prescribes lenses, prisms or ocular exercises for the correction or relief of the same." The New Jersey Supreme Court has defined optometrist (*New Jersey State Board of Optometrists* v. *Kresge Co.*, 113 N. J. L. 287; 174 Atl. 353).

" Oculists * * * pursue a calling quite distinct from that of optometrists. The first has relation to the practice of medicine and surgery in the treatment of diseases of the eye, and the second to the measurement of the powers of vision, and the adaptation of lenses for the aid thereof. [*Saunders* v. *Swann*, 155 Tenn. 310; 292 S. W. 458; *Martin* v. *Baldy*, 249 Penn. St. 253; 94 A. 1091; *McNaughton* v. *Johnson*, 242 U. S. 344; Herzog's Medical Jurisprudence, § 120.] It is the primary function of the optometrist to employ means to determine the need of lenses for the correction of defects of eyesight, and the increase of the power and range of vision. He forms a judgment as to the need, and then provides the corrective lens."

In the *Co-operative Case* (*supra*) some of the obligations, requirements and duties incidental to the practice of law are mentioned.

" The right to practice law is in the nature of a franchise from the State conferred only for merit. * * * It is attested by a certificate of the Supreme Court and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. * * * The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant " (pp. 483, 484).

The relation between the vendor and vendee of eyeglasses differs so markedly from that between lawyer and client that even the language of the *Co-operative* case is without force in this matter.

The order should be affirmed, with fifty dollars costs.

RHODES, BLISS and HEFFERNAN, JJ., concur; CRAPSER, J., dissents on the ground that a corporation may not be formed for the practice of optometry either through agents or licensed optometrists or otherwise.

Order affirmed, with fifty dollars costs and disbursements.