## GOLDING v. SCHUBACH OPTICAL CO., Inc.

No. 5843. Decided July 26, 1937. (70 P. [2d] 871.)

*Ingebretsen, Ray, Rawlins & Christensen, White, Wright & Arnovitz,* and *Dan B. Shields,* all of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *E. A. Walton,* of Salt Lake City, for respondent.

LARSON, Justice.

The defendant and appellant Schubach Optical Company is a Utah corporation engaged in the optical business at Salt Lake City, Utah. It has one office at 276 South Main

street, and another in the general department store of Auerbach Company, a corporation. The relationship between the appellant Schubach Optical Company and Auerbach Company grows out of a written lease dated the 20th day of September, 1918, whereby a small portion of floor space at Auerbach Company is leased to the defendant Schubach Optical Company, Inc. This lease long antedates the existence of any statute of a prohibitory nature relating to the practice of optometry, and it was stipulated in the record that in so far as Auerbach Company is concerned the business has been conducted ever since September 20, 1918, pursuant to the terms of the lease bearing that date. In each of its places of business Schubach Optical Company hires and discharges its own employees, selects its own merchandise, fixes the prices thereof, and prepares the advertising material for newspapers and radio.

In connection with its optical business Schubach Optical Company employs, at each establishment, a duly registered and licensed optometrist. The optometrist thus employed is paid a fixed salary and in addition thereto a commission on sales. For its use of space at the Auerbach Company store the defendant, Schubach Optical Company, pays 20 per cent of the gross receipts realized from its business at Auerbach Company. Charges are made direct to the customer by the Optical Company and are reported to the general office of Auerbach Company in the same manner as returns from other departments in said store. A monthly settlement is made by the said Auerbach Company and the Optical Company. The place of business operated by Schubach Optical Company at Auerbach's store has been advertised as "Optical Department at Auerbach's" or "Auerbach's Optical Salon." There is displayed in said place of business a card bearing the name of the manager and after his name the word "Optometrist." Any person applying for aid is referred to the optometrist, who alone, and without the direction or supervision of, or interference by any other person makes all tests and examinations and writes the prescrip-

tions for the lenses required, and the kind of frame selected by the applicant. Such prescriptions may be filled by any optical company or other concern engaged in the work of preparing lenses and manufacturing and adjusting frames for glasses. Delivery of the completed article is made to the Schubach Optical Company and the glasses are then finally fitted to the patient by the optometrist, or by some person experienced in fitting and adjusting glasses.

By the complaint herein the two defendant corporations are charged with practicing optometry in violation of the statutes, and the individual defendants are charged with unprofessional conduct in that they are advertising and practicing optometry under a name other than their own, to wit, the names of the corporate defendants, contrary to the provisions of the statutes. An injunction was prayed for and upon final hearing was granted by the trial court as to the corporate defendants. The court found in favor of the individual defendants and dismissed the case as to them. This is an appeal from the judgment awarding an injunction against the corporate defendants.

This action is predicated upon subdivision (4) of section 79-11-11, and subdivisions (6, 8, and 9) of section 79-11-14, R. S. Utah 1933, and upon rule 14 of the rules and regulations governing the practice of optometry, promulgated by the department of registration, May 31, 1933. The former section defines the practice of optometry, and the latter section defines "unprofessional conduct" in the practice of optometry. The sections, so far as material here, are as follows:

Section 79-11-11: *"Practicing Optometry Defined.*

"Any one or any combination of the following practices constitutes the practice of optometry: * * *

"(4) The display of any sign, circular, advertisement or device offering to examine the eyes without the use of drugs, medicines or surgery, to fit glasses, to adjust frames, or to duplicate or replace or accept for duplication or replacement any ophthalmic lens."

Section 79-11-14: *'Unprofessional Conduct Defined.*

"The words 'unprofessional conduct' as relating to the practice of optometry are hereby defined to include: * * *

"(6) Advertising, practicing or attempting to practice under a name other than his own. * * *

"(8) Employing either directly or indirectly any unlicensed optometrist to perform any work specified herein.

"(9) Permitting one's license or certificate to be used by another."

Rule 14 (Proclaimed by the department of registration and not a part of the statute) :

"It is unprofessional conduct for any person or optometrist to practice optometry under any name other than his own or work for a person, persons, or a firm not likewise licensed."

The findings of fact, so far as material here, follow :

III: "Neither of the said corporations has been or could be licensed to practice optometry in this State, and each of said corporations has been conducting the practice of optometry, and threatens to continue the same by and through the employment of individual licensed optometrists, and specifically each of said defendant corporations has been, and threatens to continue to be:

"(a) engaged in the practice of the profession of optometry;

"(b) engaged in the practice of examining the human eye without the use of drugs, medicine or surgery to ascertain the presence of defects and abnormal conditions which can be corrected by the use of lenses, prisms and ocular exercises;

"(c) engaged in the practice of employing objective and subjective mechanical means to determine the accommodative and refractive states of the human eye, and its range and power of vision;

"(d) engaged in the practice of prescribing and adapting without the use of drugs, medicine or surgery, lenses, prisms and ocular exercises to correct defects and abnormal conditions of the human eye, and to adjust the human eye to the conditions of a special occupation;

"(e) engaged in the practice of displaying signs, circulars, advertisements in newspapers, and over the radio, and other advertisements and devices offering to examine the eyes without the use of drugs, medicine or surgery; and to fit glasses; to adjust frames, and to duplicate and replace, and accept for the duplication and replacement ophthalmic lenses;

"(f) engaged in trafficking and assuming to traffic upon assumed skill in testing the human eye and adapting lenses thereto;

"(g) using lenses other than those actually sold in testing human eyes; and

"(h) engaged in sharing in the earnings of licensed optometrists."

V: "That the said licensed optometrists employed by the corporate defendants have been advertising and practicing under names other than their own, namely: under the names of the corporate defendants, which corporate defendants have been taking part in said practices."

Upon these findings of fact, and under the statute above quoted, the trial court discharged the individual defendants (the optometrists) and granted injunctions against the two corporate defendants. They appeal.

The issues presented on this appeal, are, as to the two defendant corporations, appellants, somewhat different. The primary question is: Does the employment, at a salary, of a licensed optometrist, by one not licensed to practice, constitute the practice of optometry by such employer? In other words, is it unlawful, for a licensed optometrist to work at a salary, for a person or corporation not licensed to practice optometry? If the first question be answered in the negative, the cause must be reversed as to both appellants. If the question be answered in the affirmative, then the question arises with respect to appellant, Auerbach, Company, as to whether or not it has been employing optometrists. We shall therefore seek an answer to the primary question set forth above.

The contention of respondent (plaintiff) that the appealing defendants have been practicing optometry is based, as shown by finding of fact No. III (quoted supra), on the fact that the Schubach Optical Company has been employing licensed optometrists at a salary to do optometrical work at its places of business. Subdivisions (b), (c), (d), and (g) of such finding of fact are the acts done by, and only by, the employed licensed optometrists. Subdivision (a) is simply a general conclusion that by means of subdivisions (b) to (h), inclusive, the corporate defendants have been engaged in the practice of optometry. Subdivisions (e) and (h) are not based solely upon the acts

of the employed licensed optometrists, and will be discussed separate from the other subdivisions. The first group therefore simply involves the question as to whether an unlicensed person can employ, at a salary, a licensed optometrist to do optometrical work at the employer's place of business. The right to sell one's service, to accept employment at a salary, and the right to buy another's service, to employ another at a salary, are fundamental rights, limited only by the terms of the contract that may be made between the parties, except where the work to be done is fraught with a public interest, and the state has spoken, and set the limitations necessary to protect the public interest.

The state has spoken on the subject of optometry and optometrists, not for the purpose of conferring any special privilege upon optometrists, nor to put any special restrictions upon them, but to preserve and protect the public against quacks and charlatans, who, however incompetent they might be, would prey upon the desire and necessity of the people to protect their eyesight. Chapter 11 of title 79, R. S. Utah 1933 (the statute referring to optometry), was enacted by the Legislature because that body felt that the protection of eyesight was of public concern, and one not qualified should not be permitted to examine eyes and diagnose and prescribe treatment, or types of glasses, to cure the defects, or preserve the failing sight. The act must therefore be construed in the light of the purposes back of its enactment; that is, as a measure to protect the health and eyesight of the people, and when this purpose is accomplished, it is not within the province or power of the court to extend it beyond such purposes; or to read into it something not designed to protect the public interest and health, but to grant monopolies, regulate private business or relationships, grant special privileges, or curtail the normal human rights and liberties.

This act was enacted for the purpose of promoting the general welfare and the protection of the public. It is not used to promote private gain or advantage, except as such

gains may incidentally result from the promotion of the public interest and welfare, for it is the public welfare which the Legislature has sought to safeguard. The Constitution declares in article 1, § 1, men are by nature free and independent, and have certain inalienable rights among which are the pursuing and obtaining of happiness, and safety, and property. These rights are invaded when one "is not at liberty to contract with others respecting the use to which he may subject his property [or use or employ his time or talents], or the manner in which he may enjoy it. The legislature may prescribe the form in which contracts shall be executed to be valid or binding, but it cannot limit the rights of parties, to incorporate into their contracts, otherwise valid, such terms as may be mutually satisfactory to them." (Bracketed expression inserted by the writer of this opinion.) *Stimson Mill Co.* v. *Braun,* 136 Cal. 122, 125, 68 P. 481, 57 L. R. A. 726, 89 Am. St. Rep. 116. The right of one to sell his time and his talents is the same, and as inalienable as the right of the owner of any other property to contract respecting the use, sale, or enjoyment thereof. This right of contract, of course, is subject to such reasonable police regulations as may be enacted to promote the public good. In determining the effect of a statute which purports to change or limit the right of contract for such purposes, the rules require that such changes or limitations must be expressly declared or reasonably implied from the language used. The statute regulating optometry stands upon the theory that the Legislature thought it injurious to the public interest to allow unskilled and unqualified persons to treat or prescribe for the treatment of the human eyesight. The chapter provides for licensing optometrists; sets forth the requirements to obtain a license, defines optometry and unprofessional conduct. That is the whole chapter on optometrists. There is no restriction on the licensed optometrist as to how, when, or for whom he may work. There is nothing forbidding him to accept employment at a salary; nothing forbidding any one

to employ him at a salary; nothing making such employment unlawful or against public policy. In fact the statute, by implication at least, recognizes that an optometrist may accept employment from others, not patients, because it provides in section 79-11-14, that it shall be "unprofessional conduct" to employ any *unlicensed optometrist* to perform any optometrical work. (Italics ours.) This clearly implies that the employment of a licensed optometrist is not "unprofessional conduct"; and it must therefore follow that the acceptance of such employment by a licensed optometrist is not unprofessional conduct. Section 79-1-38 makes it unlawful to employ any unlicensed optometrist to practice as an optometrist, thus clearly establishing that licensed optometrists may be employed. Bear in mind also that there is no statutory restriction on employing optometrists or on their being so employed.

Subdivision (6) of the section setting forth what constitutes "unprofessional conduct" reads: ■

"Advertising, practicing or attempting to practice under a name other than his own."

This, of course, means masquerading under another name, using the name of another person instead of one's own, concealing one's real identity, taking one's license under a false or assumed name; (thereby perhaps concealing matters which would prevent one getting a license) and kindred deceits and false parading. And all this, after all is a matter of "professional" or "unprofessional conduct," and applies only to the licensed optometrists themselves.

At this point we advert to rule 14, quoted above, which is not a part of the statute, but is a rule promulgated by the department of registration. It provides, and is set out haec verba in the complaint, that it shall be unprofessional conduct for an optometrist to work for a person, per- sons, or a firm not licensed. It may well be doubted that the department of registration can, by the promulga-

tion of a rule, make such things or acts "unprofessional conduct." We find no statutory authority for such rule, or declaration of policy upon which such a rule could be based or predicated.

But rule 14 has, and can have, no potency or effect in this action, or against these defendants. This also is true as to all of finding of fact No. V, and all claims made by plaintiff (respondent) under section 79-11-14 relating to unprofessional conduct. No one not in a profession can be guilty of "unprofessional conduct." Such rules are rules of conduct in the profession, and for its members. They cannot be breached by one not within them. They are not general moral codes or mores, but apply only to those within the profession. They cannot be breached by one without the profession, and such person cannot be disciplined therefor. A person not within the profession cannot be enjoined from breaching the code of ethics of the profession, nor can he be imprisoned therefor. The corporate defendants, not being licensed optometrists, cannot be guilty of "unprofessional conduct." Since the trial court found against plaintiff, and in favor of the individual defendants, the optometrists, these appealing defendants cannot even be guilty of aiding and abetting, because one cannot aid and abet that which was not done, nor aid and abet one in doing something, who in fact did nothing. Since the trial court found in favor of the individual defendants (the optometrists), it follows that there could be no finding of fact against the corporate defendants, based upon the acts which were done only by and through the optometrists.

It follows therefore that if plaintiff has a case it must be under subdivision (4) of section 79-11-11, being the matters covered in subheads (e) and (h) of finding of fact No. III. As to subdivision (h) "engaged in sharing in the earnings of licensed optometrists," it is sufficient to say that the optometrists were employed by the Schubach Optical Company at a stated salary; they made no charge for services to the patient, nor did the company make any charge for the serv-

ices of the optometrist; there were no receipts for the examinations or prescriptions of the optometrist. There could therefore be no earnings from such source, in which these defendants could share. All receipts were derived from the sale of glasses, and spectacles, by the company, and from such receipts the optometrist was paid a salary. It might be said the optometrist was sharing in the earnings from a sale of optical merchandise, but it cannot be said the company thereby shared in the earnings of the optometrist, except as a merchant may be said to share in the earnings of his clerks or salesmen because their service aids in the sale from which he gets his money. There is no claim or contention that the optometrist did not receive his salary—the complaint is that he did—nor that he shared it back with the defendant corporations. Such finding is not only unsupported by any evidence, but is contrary to all the evidence.

We come now to subdivision 4 of section 79-11-11, being subhead (e) of finding of fact III, with respect to advertising. That section provides that:

"The display of any sign, circular, advertisement or device offering [by himself] to examine the eyes without the use of drugs, medicines or surgery, to fit glasses, to adjust frames, or to duplicate or replace or accept for duplication or replacement any ophthalmic lens" constitutes the practice of optometry. (Bracketed expression inserted by the writer of this opinion.)

There is no provision in chapter 11, relating to optometry, declaring anything illegal or providing any penalties. In this regard the chapter differs from the ones relating to medicine, dentistry, pharmacists, and barbers, each of which chapters contains provisions declaring certain acts unlawful, and fixing penalties for violations of the provisions of the chapter. There is no provision in the chapter regarding optometrists, for revocation of a license once issued. In this regard it differs from pharmacists, nurses, hairdressers, cosmeticians, and electrologists, dentists, chiro-

podists, and barbers, each of which chapters contains provisions for revoking licenses and reinstating them. We must therefore look to the omnibus provisions of chapter 1 of title 79, for authority of the department of registration in dealing with optometrists and optometrical business, as to what is illegal or forbidden with respect to that business, trade, or profession. That chapter contains the following provisions: Licenses may be revoked for unprofessional conduct (79-1-25); Director may enjoin practice of optometry by unauthorized persons (79-1-37); and section 79-1-38, which declares the following to be unlawful:

(1) To practice or attempt to practice without a license.

(2) To employ any *unlicensed person* to practice in such profession.

(3) To falsely advertise or represent *oneself as authorized* to practice. (Italics ours.)

(4) To permit his license to be used by another person as the license of such person.

These four matters are the only things or acts mentioned in the statutes as unlawful so far as the practice of optometry is concerned, and if the corporate defendants have violated the law, it must be in one of these four ways. There is no contention made that subdivisions (2) or (4) have been violated by these defendants. In fact No. (4) is an offense that could only be committed by a licensed person, to wit, permitting his license to be paraded as the license of another person. And as to No. (2), it is freely admitted that defendants employed only licensed optometrists to do optometrical work.

Subdivisions (1) and (3) involve the matter of advertising and reverts again to subdivision (4) of section 79-11-11, quoted above. Be it noted that under this section advertising is not forbidden. The section expressly authorized the advertising of the optometry business; in fact, it declares that advertising optometry is the practice of optometry, and, of course, a business which the act licenses could not be in violation of the act. Apart from this there is no pro-

vision with respect to advertising, and it follows that any one may advertise as long as the advertisements are not fraudulent, untrue, corruptive of morals, or violative of sense of decency. When we quoted said paragraph (last time above) we inserted in brackets, after the word "offering," the expression "by himself," as its very evident meaning, in view of the provisions of the only section of the statute which makes acts unlawful, to wit: Section 79-1-38, providing "to falsely advertise or represent himself as so authorized" to practice the profession. Clearly, the display of a sign or advertisement "offering to examine the eyes," etc., is not unlawful unless the sign or advertisement falsely represents some one who is not authorized, as authorized to practice, to examine eyes, etc.

Did then these defendants, by signs, circulars, or advertisement, offer, by themselves, or some other unauthorized person "to examine the eyes, fit glasses, adjust frames or to duplicate or replace or accept for duplication or replacement any ophthalmic lens"? We have made a careful examination of the record. There were a total of forty-one advertisements from over the radio as to the optical department at Auerbach's put in evidence by plaintiff. Of these, thirty distinctly advertise the name of the "registered, licensed optometrist" who makes the examination, etc.; seven others while not using the name of the optometrist do say, "a registered licensed optometrist," and of these seven, two were merely closing announcements of five minute broadcasts, where the opening announcement had given the name of the optometrist; one other announcement contained the term "professional optometrist" in charge; and three announcements make no mention of "optometrist."

We note a few samples at random:

"At the Optical Department in Auerbach's the experience and combined professional knowledge of two competent and registered optometrists is at your service. Let Dr. Erickson and Dr. Decker help you keep your eyes normal."

"In the Optical Department at Auerbach's you get the combined experience and professional knowledge of Dr. Erickson and Dr. Decker, both registered optometrists."

"Dr. James G. Erickson and Dr. F. Morz Decker, registered optometrists in charge."

"The Optical Department in Auerbach's under the careful supervision of Dr. Erickson and Dr. Decker offers you the very best in modern eye care. See the registered optometrists for an eye examination."

"Combine the skill and scientific knowledge of two registered optometrists—with the most modern and up-to-date equipment for the testing of your eyes" at Auerbach's Optical Department.

"For careful and reliable eye services, go to the Optical Department at Auerbach's."

The above are taken at random as illustrations. Clearly, they do not represent the defendant, Auerbach's, or any other person or firm, not licensed, as authorized to practice, or as practicing optometry. They merely advertise the presence at Auerbach's of registered, licensed optometrists, presumably employed by the corporations to render optometric services.

Let us notice the record of advertisements with respect to the Schubach Optical Company. There are thirty-five advertising announcements in the record. Of these, eighteen give the name of the registered, licensed optometrist; eight say they have a licensed optometrist, but do not give his name; seven refer to Schubach Optical Co. as "a safe place to have your eyes examined," but say nothing about who does the work; and two are advertising binoculars and optical goods, with no mention of eyes, examinations, or fitting glasses. In content they are similar to the Auerbach announcements. There were five radio announcements which contained expressions that the company would "replace or duplicate broken lens." There was evidence that on the front windows were "Optometrist. Eyes Examined, Lens duplicated. Reduced Prices." The above is the whole complete record as to advertising, displaying signs, circulars, or devices offering to examine eyes, fit glasses, adjust frames, or replace or dupli-

cate lens. As to whether the Legislature may prohibit such advertising or provide that it must be licensed, we are not called upon to express an opinion. What we do hold is that the Legislature has not done so. The record fails to show either company doing anything in the practice of optometry except hiring for salary, licensed optometrists to work at their place of business, which again asks the question, "Is an unlicensed person who hires a licensed optometrist to do optometrical work at his place of business, at a salary, thereby practicing optometry"? We think this question must be answered in the negative, in view of section 79-1-38 that the only unlawful thing, or forbidden thing, with respect to advertising is to falsely represent some one not authorized, as authorized to practice optometry.

Let us now examine the cases and see what they say. A very enlightening discussion of the question of employing optometrists as constituting the practice of optometry is given in *Dvorine* v. *Castelberg Jewelry Corp.*, 170 Md. 661, 185 A. 562, 567, by Judge Offutt of the Supreme Court of Maryland. That case was on facts very similar to the one at bar, and the statute, as far as involved in the case, was substantially like our statute. We quote from the opinion:

"These provisions sufficiently manifest an intention that no one shall be permitted to physically and manually practice the calling of optometry in this state who does not possess the qualifications required by the statute, and who does not hold the registration certificate to be issued by the board as an evidence of such qualification. The adequate protection of the public health required no more than that, and beyond that the Legislature did not go. In Code, art. 43, § 315, it defined the 'practice of optometry' in the words quoted above, and in section 316 it construed that definition providing that: 'It shall be construed as practicing optometry for any person to prescribe, give directions or advise as to the fitness or adaptation of a pair of spectacles, eyeglasses or lenses for another person to wear for the correction or relief of any condition for which a pair of spectacles, eyeglasses or lenses are used, or to use or permit or allow the use of instruments, test cards, test types, test lenses, spectacles or eyeglasses or anything containing lenses, or any device for the purpose of aiding any person to select any spectacles, eyeglasses or lenses to be used

or worn by such last mentioned person or by any other person.' In the same section it further provided that no person should practice optometry as thus defined in this state without a certificate of examination, or a certificate of registration issuable to persons engaged in the practice of optometry on April 13, 1914.

"That definition as construed by the statute itself applies only to service rendered personally by the optometrist to his patron and to the manual, physical, personal practice of the art. It does not make it unlawful to employ and sell the service of an optometrist, nor does it make it unlawful for an optometrist to contract with another, upon such terms as he deems proper, to serve such patrons as may be sent to him by or on behalf of the other. Nor does it make it unlawful for his employer to advertise to the public that he will through the agency of a registered optometrist furnish such service to those who may apply therefor.

"The question is, not whether the Legislature may prohibit a corporation or a lay natural person from furnishing service in a regulated employment through the agency of others, but whether it has done so in this statute, and a mere reading of the statute demonstrates that it has not."

And the Supreme Court of New Jersey in *Jaeckle* v. *L. Bamberger & Co.*, 119 N. J. Eq. 126, 181 A. 181, 182, under facts very similar and under statutes a little broader than ours, holds that the employment of a licensed optometrist under facts like these is not practicing optometry:

" 'Any person violating any of the provisions of this act * * * and any person, company or association who shall employ for a stated salary or otherwise, or give aid or assist, any person not authorized under this act to practice optometry within the meaning of this act, to practice optometry in this State, shall be subject to a penalty of two hundred dollars.'

"If the maxim be applied, 'Whoever acts through an agent is considered as acting himself,' it must be held that defendant is practicing optometry, but I think the maxim cannot be applied to the statute. The statutory scheme protects the public by requiring those who actually examine eyes to be properly qualified. It is immaterial whether they practice their profession on their own behalf or whether they are employed by other optometrists, or by persons not skilled in the art, or by corporations. Section 1 expressly includes in its scope a person who practices 'either on his own behalf or as an employee' of another, but not one who, through the agency of an employee, measures

the powers of vision. Section 22 imposes a penalty on an individual or a company who employs to practice optometry a person not authorized under the statute. Clearly, a company which employs for this purpose a person who is authorized to practice optometry is not subject to the penalty. It follows, in my opinion, that the Legislature did not intend to prohibit a company from employing registered optometrists to practice their profession.

"Defendant is not practicing optometry within the meaning of the statute, and so the bill will be dismissed."

The Nebraska court, in an action to oust a corporation from the state because it employed physicians and surgeons to render services to people, the corporation collecting the fees and paying the doctor a salary, held that such business was not practicing medicine. In *State Electro-Medical Institute* v. *State,* 74 Neb. 40, 103 N. W. 1078, 1079, 12 Ann. Cas. 673, at page 674, it is said:

"There was no necessity of legislation to prohibit corporations, as such, from practicing medicine. It is impossible to conceive of an impersonal entity 'judging the nature, character and symptoms of the disease,' or 'determining the proper remedy,' or giving or prescribing the application of the remedy to the disease. Members of the corporation, or persons in its employ, might do these things, but the corporation itself is incapable to do them. The qualification of a medical practitioner is personal to himself. The intention of the law is that one who undertakes to judge the nature of a disease, or to determine the proper remedy therefor, or to apply the remedy, must have certain personal qualifications; and, if he does these things without having complied with the law, he is subject to its penalties. Making contracts is not practicing medicine. Collecting the compensation therefor is not practicing medicine, within the meaning of this statute. No professional qualifications are requisite for doing these things. * * *

"It seems clear that this defendant has not practiced or attempted to practice medicine, within the meaning of this statute, and is not guilty of the violation of the law charged against it. The judgment of the district court is therefore reversed, and the cause dismissed."

This case is cited, quoted, and approved by the Supreme Court of Illinois in *People ex rel.* v. *Rodgers Company,* 277 Ill. 151, 115 N. E. 146.

A case, so like the one at bar, that by a mere substitution of names they cannot be distinguished is the very recent case of *State ex inf. McKittrick* v. *Gate City Optical Company,* reported in 97 S. W. (2d) 89, 91, in which the Supreme Court of Missouri reviews many cases and all the arguments. The Missouri statute in its definition of optometry, its exemption provisions, its license provisions, sections providing for displaying license at place of business or employment, are mostly identical with ours, except that the definition of optometry does not include subdivision (4) of our section (79-11-11) relating to advertising. The court there, quoting with approval *Dickson* v. *Flynn,* 246 App. Div. 341, 286 N. Y. S. 225, says:

" 'The legislative intent is too clear to support extended argument. The statute was passed because the legislature believed it an aid to public health and the courts have held it to be constitutional because of its relation to public health. The benefit was intended for the public not the optometrist.' "

The Missouri Court continues:

"So far as pertinent to our question, the New Jersey act is substantially the same as that of our state. The court considered but declined to apply the doctrine of agency and held that defendant was not practicing within the meaning of the act. With regard to the statutory scheme for the protection of the public, the court observed that it was immaterial whether licensed optometrists practiced their profession on their own behalf or whether they were employed by other optometrists, or by persons not skilled in the art, or by corporations. The court also observed that said defining section specifically includes in its scope a person who practices ' "either on his own behalf or as an employee" of another, but not one who, through the agency of an employee measures the powers of vision'; and that clearly, a corporation which employs for this purpose a person who is authorized to practice optometry is not subject to the penalty authorized to be imposed upon an individual or a corporation who employs to practice optometry one not authorized under the statute. * * *

"The elucidations contained in the cases reviewed herein, and particularly as contained in *State ex inf.* v. *Lewin et al.* [128 Mo. App. 149, 106 S. W. 581]; *State* v. *Knapp* [327 Mo. 24, 33 S. W. (2d) 891]; *Jaeckle* v. *L. Bamberger & Co.* [119 N. J. Eq. 126, 181 A. 181, 182];

and in the dissenting opinion in *Eisensmith* v. *Buhl Optical Co.* [115 W. Va. 776, 178 S. E. 695], are clear, rational, logical, and convincing. The common result reached properly exemplifies the public policy of our state, and renders further discussion unnecessary. Certain significant terms used in our statute are pressed upon our attention as supporting the result already attained, but we deem it unnecessary to give them attention. Indeed, the statute seems so plain on its face as to furnish its own clear interpretation. In such case it seems appropriate to add, by way of emphasis, that, 'Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. "Expressum facit cessare tacitum." We must not interpret where there is no need of it.' *Clark* v. *Railroad Co.*, 219 Mo. 524, 534, 118 S. W. 40, 44."

The burden of respondent's (plaintiff's) argument, the basis of his position, is that optometry is a "learned profession," and although the statute does not forbid or prohibit the practices of which he complains, the court should extend, by implication, the statute to enjoin the practice because optometry being a "learned profession" is subject to strict regulation in its conduct and privileges, as were law, medicine, the ministry, and military science, even before regulatory statutes. It matters not whether optometry be regarded as a "learned profession" or not. It is a "licensed profession," or trade, which had no regulation until the Legislature acted and set up standards and regulations. The Legislature, having so acted, the court cannot go beyond what the Legislature has done. We are not concerned with what the regulations or limitations should be. That argument must be addressed to the Legislature. We are only concerned with what the Legislature has said; how far have they gone?

We have heretofore discussed in some detail what the Legislature has said about optometry and showed there is no declaration against optometrists or corporations doing what has been done here. We are unable to find any evidence of a public policy in this state as contended for by respondent. As far as there is any intimation of policy, it is against respondent's position.

We have carefully examined the statutes of all other states wherein cases have been cited or read. We have read all reported cases cited by counsel and some others. Most of them are on facts different from those here; many were proceedings against the optometrist for unprofessional conduct, and others were under statutes entirely different from ours. The case of *Funk Jewelry Co.* v. *State ex rel. La Prade*, 46 Ariz. 348, 50 P. (2d) 945, was upon a question of pleading on demurrer to a complaint. No facts are stated, and the discussion is purely a law question of the sufficiency of a pleading to state a cause of action against general demurrer. A detailed review thereof could serve no useful purpose.

The question is not as to whether the state can regulate or prohibit the employment of optometrists or prohibit advertising of the business or profession, but has it done so? The Legislature has not forbidden such employment, or such advertising as was done here. The judgment is reversed, and the cause remanded to the district court with directions to enter judgment in favor of the defendants. Each party to bear its own costs.

FOLLAND, C. J., and EPHRAIM HANSON, J., concur.

MOFFAT, Justice.

· I concur in the result.

WOLFE, Justice.

I concur. As to the type of advertising put out by Auerbach and Schubach, some of it, I think, approaches the line of leading the public to believe that they are themselves practicing optometry and, if so, would be in contravention to subsection (3) of section 79-1-38. But I am unable to say that it was not sufficiently indicative, except possibly in several instances, that some licensed optometrist was doing the eye testing for them.