## L. L. WILLIAMS v. CHARLES G. MACK AND OTHERS.[1]

April 1, 1938.

No. 31,539.

[1]Reported in 278 N. W. 585.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *Peter E. Kamuchey,* Special Assistant Attorney General, for appellants.

*Bradford, Cummins & Cummins* and *L. E. Brophy,* for respondent.

HOLT, JUSTICE.

Defendants appeal from the judgment rendered upon the pleadings.

Plaintiff is a duly licensed optometrist in this state and sued to enjoin defendants, constituting the Minnesota State Board of Optometry, from proceeding under the complaint filed with the board against plaintiff to revoke his license because of alleged unprofessional conduct. Plaintiff's amended complaint alleges the official character of defendants, which the answer admits. Likewise, it is averred and admitted that plaintiff is a duly licensed optometrist of this state, under L. 1929, c. 420; that under that law the board has adopted the rules which are made part of the complaint; that

404

there has been filed with the board by one Kollofski the written complaint, a true copy of which is made a part of the amended complaint herein, charging plaintiff with violation of said rules; and that the board has cited plaintiff to show cause why his license should not be revoked upon such charges. On plaintiff's motion judgment was entered on the pleadings enjoining the board from conducting a hearing on the charges as set forth in the Kollofski complaint. From this judgment the board appeals.

Under the assignments of error counsel for appellant presents three propositions for decision, *viz.:* (a) Is optometry a profession? (b) Is L. 1929, c. 420, constitutional? (c) Is the Kollofski complaint upon which the board proposes to revoke plaintiff's license sufficient?

There is no occasion to decide whether or not optometry is a profession, a trade, a vocation, or an art; for, by whatever name called, the work of an optometrist is sufficiently related to or connected with public health—eyesight—to come within the domain of the police power of the state. The statute (3 Mason Minn. St. 1936 Supp. § 5789, L. 1929, c. 420, § 3) sufficiently defines an optometrist and his work.

Plaintiff does not assail the constitutionality of L. 1929, c. 420, nor any provision of the optometry statutes, and perhaps is not in position to so do, since he is seeking to protect the license granted in virtue of such statutes. Cofman v. Ousterhouse, 40 N. D. 390, 168 N. W. 826, 18 A. L. R. 219. This court will assume a law to be valid which is not assailed as unconstitutional by any party to the litigation.

We think the decision of this appeal must turn upon the sufficiency of the Kollofski complaint. Do the accusations therein made against plaintiff, if proved, furnish the board grounds for revoking his license? The substance of the accusations is that he has accepted employment as an optometrist, at a stated salary, with Goodman Brothers Jewelry Company, an entity incapable of being licensed as an optometrist, and thereby aids and abets it in practicing illegally. We have in mind that a complaint filed with an administrative board is not to be tested by the rules applied to pleadings in judi-

cial proceedings, and that procedural matters before such a board are within such board's control. But it is quite apparent that the board deems that it is authorized to revoke plaintiff's license if his employer is found guilty of violating the optometry statutes. L. 1929, c. 420, § 2 (§ 5786 of the code) reads:

"Said board of optometry shall have the power to make any rules and regulations and to do any and all things, not inconsistent with law, which it may deem necessary or expedient for the effective enforcement of this act or for the full and efficient performance of its duties thereunder."

The board duly adopted and promulgated ten rules in 1936 in virtue of the section quoted. The rules which the Kollofski complaint charges plaintiff's employer to have violated are rules 1 and 8. Rule 1 forbids "bait" advertising, and rule 8 requires all optometry advertisements and signs to follow the name of the optometrist with the word "Optometrist," or with the initials "O. D.," or "D. O.," or "D. O. S." We shall assume, for the purposes of this decision, that these two rules are valid. However, plaintiff is not accused of any violation of these rules. But by virtue of rule 6 he is to be held responsible for his employer's violation thereof. Rule 6 reads:

"Licensed optometrists employed by any person, firm or corporation for a salary or commission or both for the purpose of supervising and personally attending the sale of glasses as merchandise under the provisions of the Optometry Law of the State of Minnesota are presumed to at all times have full knowledge of and consent to every advertisement or announcement of their employer involving the sale of glasses or leading the public into the belief that such person, firm, or corporation is authorized to render optometrical services and such optometrists will be held responsible for all such advertisements on the grounds and for the reason that such advertisements constitute unprofessional conduct on the part of such optometrist."

We think the board in rule 6 exceeded the power granted it by § 5786. This provision in § 5789 plainly makes it impliedly lawful

for a licensed optometrist to work for one engaged in the business of selling eyeglasses at retail:

"And it shall be unlawful for any person, not licensed as an optometrist hereunder, to sell or dispose of, at retail, any spectacles, eye glasses or lenses for the correction of vision in any established place of business or elsewhere in this state except under the supervision, direction and authority of a duly licensed optometrist holding a certificate under this Chapter, who shall be in charge of and in personal attendance at the booth, counter or place where such articles are sold or disposed of."

This provision certainly implies that it is lawful for a vendor of eyeglasses at retail to employ a licensed optometrist to supervise and conduct such sales. Rule 6 itself recognizes that it is lawful for a licensed optometrist to accept employment of another in the business of retailing eyeglasses. The employment being lawful under the optometry law as it now stands, it seems to us that it is contrary to the letter and spirit of the law to make the employe responsible for the employer's violation of the law and to impute knowledge of such violations to the employe. If the employer violates the optometry act in any manner he may be enjoined or prosecuted. To violate any provision of the law is a gross misdemeanor. 1 Mason Minn. St. 1927, § 5794. There is no right or justice in punishing the servant for the misdeeds of the master. We have not overlooked that the Kollofski complaint charges that plaintiff aided and abetted his employer in the violation of rules 1 and 8, but it is clearly evident from the whole complaint that this is a conclusion drawn from the fact that he did not quit the employment when informed of the employer's transgressions. The learned trial court stated:

"If under the law an unlicensed person may employ a licensed optometrist to supervise the sale of corrective lenses and if such supervision includes 'fitting' lenses through optometric examination and prescription, then the charge that the plaintiff aided and abetted his employer to practice optometry must fail, for the only aiding and abetting charged against the plaintiff is practicing optometry

as an employe of Goodman Brothers Jewelry Company. As construed by the court, this the plaintiff may do under the law."

It should not be lost sight of that the primary purpose of the optometry legislation is the protection of public health—human eyesight. It was not intended to further the personal interests of the optometrists except insofar as their advancement in skill and efficiency serves the primary purpose of the law. When the purchaser of eyeglasses has the services of a competent licensed optometrist in selecting and fitting them to his eyes, he has had all the benefits the law intended. To be sure, our optometry statutes, with the restrictions against advertising prices and sharing fees and other regulations, give rise to the suspicion that they were sponsored by the optometrists for their own pecuniary benefit instead of being prompted by the legislators' appreciation of the need of protecting the public. But, that notwithstanding, it is the courts' duty to construe them as primarily intended to safeguard peoples' eyesight. The New York optometry statute [Laws of N. Y. 1928, c. 379, § 1] contains this provision [see 286 N. Y. S. 225, 227]:

"It shall be unlawful for any * * * corporation to sell, at retail, as merchandise, in any store or established place of business in the state, any spectacles, eyeglasses, or lenses for the correction of vision, unless a duly licensed physician or duly qualified optometrist, certified under this article, be in charge of and [in] personal attendance at the booth, counter or place, where such articles are sold in such store or established place of business."

This is substantially the same as the above quoted provision from § 5789 of our law. The secretary of state refused to accept for filing the articles of incorporation to conduct an optical business, because the articles contained a clause to sell at retail eyeglasses under the charge of and in personal attendance of a licensed optometrist. The applicant brought *mandamus* against the secretary of state. The optometrical society intervened. *Mandamus* was granted. Dickson v. Flynn, 246 App. Div. 341, 286 N. Y. S. 225, 227 (affirmed without opinion 273 N. Y. 72, 6 N. E. (2d) 102). After

quoting the New York provision as above, the court made these apt observations, in point here:

"Thus the right to do a lawful act was curtailed. However, the right, so curtailed, still remains. The legislative intent is too clear to support extended argument. The statute was passed because the legislature believed it an aid to public health, and the courts have held it to be constitutional because of its relation to public health. The benefit was intended for the public, not the optometrist. Otherwise the statute would have been unconstitutional. The Legislature did not deem it necessary to create a professional optometrist monopoly. Poverty or the lack of ability to pay has relation to public health, and the Legislature may well have believed that competition between optometrist and store would make for more reasonable prices and profits, and that public health would be benefited thereby and could not suffer with an eye specialist present in the store at the place of sale."

Defendants much rely on McMurdo v. Getter, — Mass. —, 10 N. E. (2d) 139, 143. The action was to enjoin a firm dealing in optical goods, including eyeglasses, from practicing as optometrists. The physician employed by the firm, at a weekly salary to supervise the sale of glasses, was not made a party. The Massachusetts law provides [G. L. (Ter. ed.) c. 112, §§ 66-73, as amended, St. 1934, c. 339, § 2; St. 1937, c. 287]:

"No optometric practise or business * * * shall be conducted under any name other than that of the optometrist or optometrists actually conducting such practise or business."

It is readily perceived that the provision is not at all similar to the one quoted from § 5789 in our law. Defendants also cite the following: Funk Jewelry Co. v. State ex rel. La Prade, 46 Ariz. 348, 50 P. (2d) 945; State v. Kindy Optical Co. 216 Iowa, 1157, 248 N. W. 332; Bennett v. Indiana State Board, 211 Ind. 678, 7 N. E. (2d) 977; State ex rel. Beck v. Goldman Jewelry Co. 142 Kan. 881, 51 P. (2d) 995 (annotated 102 A. L. R. 334); Rowe v. Standard Drug Co. 132 Ohio St. 629, 9 N. E. (2d) 609; Eisensmith v. Buhl

Optical Co. 115 W. Va. 776, 178 S. E. 695. These are all cases to enjoin the offending corporation or company from practicing optometry, except the Indiana case. In the decisions named the courts rendering them found provisions in the statutes of their state forbidding the sale at retail of spectacles by others than duly licensed optometrists, as, for example, the statute of Indiana (Acts 1935, c. 38, § 11 [g]) makes this unprofessional conduct:

"The direct or indirect acceptance of employment to practice optometry from any person other than one who possesses a valid unrevoked certificate of registration as an optometrist in and for the state of Indiana and who has an actual legal residence within the state."

But the difference in the statutes may not be sufficient to reconcile the decisions just cited with the ones hereinafter referred to. However, in none of the cases that have come to our notice was an offending optometrist sought to be enjoined or disciplined, except that in the Rowe case, where after an injunction had been granted against the Standard Drug Company, an optometrist and his employer, not parties to the injunction suit, were adjudged guilty of contempt for violating the injunction, but the judgment was reversed as to them on the appeal.

The following decisions from states having optometry statutes with provisions in substance like the one quoted from § 5789 of our code hold that it is lawful for a corporation or firm, not capable of being licensed to practice optometry, to engage in the business of selling eyeglasses at retail, provided a duly licensed optometrist is placed in charge of and personally attends to the sales. It is taken for granted that the employment is lawful and that the law is not interested in the compensation agreed upon. Sage-Allen Co. Inc. v. Wheeler, 119 Conn. 667, 179 A. 195 (annotated in 98 A. L. R. 897) ; Georgia State Board of Optometry v. Friedman's Jewelers, Inc. 183 Ga. 669, 189 S. E. 238; Dvorine v. Castelberg Jewelry Corp. 170 Md. 661, 185 A. 562; State ex inf. McKittrick v. Gate City Optical Co. 339 Mo. 427, 97 S. W. (2d) 89; Jaeckle v. L. Bamberger & Co. 119 N. J. Eq. 126, 181 A. 181, affirmed 120 N. J. Eq. 201, 184 A. 520;

410

Dickson v. Flynn, 246 App. Div. 341, 286 N. Y. S. 225; Golding v. Schubach Optical Co. 93 Utah, 32, 70 P. (2d) 871. We think these well considered cases sustain the conclusion of the trial court that under our law a duly licensed optometrist may lawfully, at stated salary, enter the employment of a company or corporation to supervise and personally attend its business of selling eyeglasses at retail; that the Kollofski complaint does not state an offense, under the law or under such rules as the board has power to make, for which the board may revoke plaintiff's license; and that it exceeded its power in its rule 6. If the Goodman Brothers Jewelry Company violates any provision of the optometry statute or the lawful rules of the defendant board, it may proceed against the company.

Judgment affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

