STATE, BY WILLIAM S. ERVIN, ATTORNEY GENERAL, v. MAX GOODMAN AND OTHERS.[1]

November 3, 1939.

No. 32,129.

[1]Reported in 288 N. W. 157.

204

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Peter E. Kamuchey,* Special Assistant Attorney General, for appellant.

*Samuel Lipschultz,* for respondents.

PETERSON, JUSTICE.

The complaint charges defendants, who are copartners in the jewelry business, with unlawfully practicing optometry. They are not licensed as optometrists but are engaged in the business of selling at retail eyeglasses for the correction of vision. One L. L. Williams, a duly licensed optometrist, is employed by defendants to conduct the optometric business under his exclusive charge, supervision, and control. He does everything in connection with the business usually done by optometrists, including eye examinations, prescribing eyeglasses, having the prescriptions filled by an optical firm, and adjusting and fitting the eyeglasses to the purchaser's eyes. He also renders other services such as eye muscle and glass adjustments. He charges the customer or patient no fee for the services as such. The price of the eyeglasses includes compensation for all services rendered. All money collected and received on account of the optometry business is turned in to defendants and becomes theirs absolutely. Williams has no right to any part thereof. He receives as compensation a weekly salary.

Defendants own and furnish all the equipment, apparatus, and

materials used in conducting the business. Included in such apparatus which defendants own and possess is an apparatus for testing and measuring the powers of vision of the human eye. This apparatus is one of the bones of contention in this case.

Defendants held themselves out as optometrists and opticians by newspaper and moving picture advertising and by signs displaying an eye, a pair of eyeglasses, and certain apparatus and equipment used by optometrists in examining eyes and correcting vision.

Although defendants had discontinued holding out by advertising, the court below enjoined them from continuing such acts. It held that the sale of eyeglasses by defendants conducted under the direction and in charge of Mr. Williams and defendants' ownership and possession of the eye-testing apparatus for Williams' exclusive use in connection with such business were lawful, and refused to enjoin such acts. Plaintiff only appeals.

Two questions are presented: (1) Whether the defendants were unlawfully practicing optometry by selling eyeglasses through their employe Williams under the arrangement stated; and (2) whether defendants' ownership and possession of the eye-testing apparatus for Williams' exclusive use in connection with such business in itself was unlawfully practicing optometry.

■ Plaintiff's contention is that defendants are guilty of practicing optometry unlawfully for the reason that defendants, who are not licensed as optometrists, are engaged in the business of selling eyeglasses, for the correction of vision, at retail. Defendants contend that the sales of eyeglasses are lawful, since they are made under the supervision, direction, and authority of a duly licensed optometrist, Mr. Williams, who is employed by them and who as such employe has charge of such sales and is in personal attendance on all such business. To sustain their respective contentions, both parties rely on that part of 3 Mason Minn. St. 1938 Supp. § 5789, which reads as follows:

"And it shall be unlawful for any person, not licensed as an optometrist hereunder, to sell or dispose of, at retail, any spec-

tacles, eye glasses or lenses for the correction of vision in any established place of business or elsewhere in this state except under the supervision, direction and authority of a duly licensed optometrist holding a certificate under this Chapter, who shall be in charge of and in personal attendance at the booth, counter or place where such articles are sold or disposed of."

In Williams v. Mack, 202 Minn. 402, 278 N. W. 585, 589, we held that the employment of Williams by defendants under the arrangement disclosed here was lawful. Construing the statute, we held [202 Minn. 409] "that it is lawful for a corporation or firm, not capable of being licensed to practice optometry, to engage in the business of selling eyeglasses at retail, provided a duly licensed optometrist is placed in charge of and personally attends to the sales." Plaintiff cites many cases which he urges to sustain his position. Most of these cases were considered by us in Williams v. Mack, where they are reviewed and classified in the light of the legislation which they construed. We do not deem it necessary again to go over the ground which we so recently traversed. The other cases cited are clearly not in point as a short statement will disclose. In McNaughton v. Johnson, 242 U. S. 344, 37 S. Ct. 178, 61 L. ed. 352, Ann. Cas. 1917B, 801, the question was whether the state of California had the power to require plaintiff, who was an ophthalmologist, to be licensed as an optometrist before engaging in the practice of optometry. In Seifert v. Buhl Optical Co. 276 Mich. 692, 268 N. W. 784, the action was brought to restrain defendant from engaging in unlawful advertising of the prices of eyeglasses and that all sales included scientific examinations. Two cases from Ohio, State ex rel. Harris v. Myers, 128 Ohio St. 366, 191 N. E. 99, and State ex rel. Bricker v. Buhl Optical Co. 131 Ohio St. 217, 2 N. E. (2d) 601, arose under a statute which differs essentially from ours, as we pointed out in Williams v. Mack, 202 Minn. 402, 409, 278 N. W. 585, in considering the later Ohio case, Rowe v. Standard Drug Co. 132 Ohio St. 629, 9 N. E. (2d) 609, which cites and refers to State ex rel. Bricker v. Buhl Optical Co. The facts in Neill v. Gimbel

Bros. Inc. 330 Pa. 213, 199 A. 178, are similar to those appearing here, but the statute is different, as the decision shows. It does not contain a provision similar to our § 5789 and absolutely prohibits in effect the employment of a licensed optometrist by one who is not licensed as such.

We adhere to and follow the construction of the statute announced in Williams v. Mack. No sufficient reason has been advanced for modifying the rule of that case. Our conclusion is that defendants were not guilty of unlawfully practicing optometry by employing Williams under the circumstances of the case.

■ It is claimed that the defendants' ownership and possession of the eye-testing apparatus is a violation of that part of § 5789 which provides that any person shall be deemed to be practicing optometry within the meaning of the statute who shall "have in his possession testing appliances for the purpose of the measurement of the powers of vision."

The provision authorizing the sale of eyeglasses by an unlicensed vendor is found in the same exception, which permits such sales provided that a licensed optometrist employed for the purpose is in charge and has the direction of the business.

An exception in a statute exempts from its operation something that would otherwise be within it. Cohen v. Gould, 177 Minn. 398, 225 N. W. 435; Cobb v. Bord, 40 Minn. 479, 42 N. W. 396. The exception here exempts the business of selling eyeglasses as conducted by defendants from the operation of the act. The exemption is, of course, subject to statutory condition that a duly licensed optometrist be placed in charge and personally attend to the sales.

The statute, it is true, does not in terms say either that the optometrist in charge and attending to the sales shall render optometric service to purchasers of eyeglasses or that he shall have equipment, tools, and apparatus for examining and adjusting and fitting glasses. The lack of explicit statement in the statute may hinder, but does not prevent, ascertainment of the

meaning. Often, as in the instant case, a statute speaks as plainly by inference and by means of the purposes which underlie it as in any other manner.

The exception is to be construed in harmony with the remainder of the statute. State ex rel. Wilson v. Bigelow, 52 Minn. 307, 54 N. W. 95; State ex rel. Town of Marine v. Browne, 56 Minn. 269, 57 N. W. 659. The purpose of the statute is the promotion of public health by the protection of human eyesight by providing purchasers of eyeglasses with the services of a competent, licensed optometrist in selecting and fitting them to the eyes. Williams v. Mack, 202 Minn. 402, 278 N. W. 585. The statute provides for such services where the purchaser deals directly with an optometrist by limiting the right to practice optometry to those who are duly licensed, and where he deals with an unlicensed vendor by requiring the sale to be under the personal charge and direction of a licensed optometrist. The object of requiring the sales to be under the personal charge and direction of a licensed optometrist is that the purchaser shall have all the services ordinarily rendered by an optometrist, including examination of the eyes, selection of the proper lenses, and fitting and adjustment of them to his eyes. That the optometrist shall be in charge of the business for the purpose stated conforms to the clear purpose of the statute. Such a requirement is inexplicable upon any other basis. In Roschen v. Ward, 279 U. S. 337, 49 S. Ct. 336, 73 L. ed. 722, the question was whether a statute similar to ours, making it unlawful to sell eyeglasses at retail unless a physician or optometrist was in charge of the place of sale and in personal attendance at it, but not expressly providing for eye examinations by the physician or optometrist, required eye examinations by such specialist in connection with sales of eyeglasses. The court held that to hold that the statute did not require the eye examinations was a plain perversion of the statute. Mr. Justice Holmes, speaking for the court, said [279 U. S. 339]:

"When the statute requires a physician or optometrist to be in charge of the place of sale and in personal attendance at it, obviously it means in charge of it by reason of and in the exercise of his professional capacity. * * * there is no canon against using common sense in construing laws as saying what they obviously mean."

The statutory requirement that the unlicensed vendor provide optometric service to the eyeglass purchaser through a duly licensed optometrist comprehends, as does any other grant of a right, power, or privilege, all such incidental, collateral, and subsidiary consequences as may be fairly and logically inferred from its terms. 6 Dunnell, Minn. Dig. (2 ed.) § 8949. Permission to engage in the business of selling eyeglasses includes the right to do the things reasonably and properly incident to such dealing. State ex inf. McKittrick v. Gate City Optical Co. 339 Mo. 427, 97 S. W. (2d) 89. Ownership and possession of eye-testing apparatus and other appliances by the unlicensed vendor for the sole use of the licensed optometrist in rendering optometric service to purchasers of eyeglasses in connection with sales thereof is incident to the rendition of such service and to the right to engage in the business of selling eyeglasses. Such an incident enables the vendor through his employe to render the service which the statute requires of him. There is no provision of law requiring an optometrist employed by another to provide his own apparatus in carrying on his employer's business. Defendants' possession of the eye-testing apparatus under the circumstances disclosed was not unlawful.

Affirmed.